The Commonwealth *ex rel.* The Attorney-General *versus* The Pittsburg and Connellsville Railroad Company.

1. A demurrer, whether special or general, puts the whole record before the court, and judgment must be rendered against the party who has first failed in pleading.

2. It is no cause of forfeiture of a charter from Pennsylvania that the same corporation has obtained a charter from another state.

3. A corporation chartered by one state cannot transfer its allegiance by accepting a charter from another. It does not thus throw off its original obligation, nor can it shelter itself under its new relation from any violation of its duties under its old one.

4. All the rights of the Commonwealth against her own corporation will be enforced, without regard to immunities claimed from process beyond her territories and within the jurisdiction of another state.

5. A corporation which undertakes to drag its sovereign to a foreign examination, before the bar of the tribunals of another state, violates its first and paramount duty and subjects itself to the extremest consequences.

6. The Circuit Court of the United States is not the court of another sovereign to one of the states.

7. A Pennsylvania corporation was incorporated also by Maryland, and as a Maryland corporation commenced suit against the Pennsylvania corporation to declare an Act of Assembly void. *Held,* that the corporation violated no duty to Pennsylvania.

8. No mere intention of a corporation to violate its duty is a cause of forfeiture.

9. Construction of the various Acts of Assembly relating to the Pittsburg and Connellsville Railroad Company.

10. The power of the legislature of Pennsylvania in grants and contracts is limited and restrained by the Federal and State Constitutions, so that it cannot impair contracts made either by itself or others.

11. The legislature is not the final judge of whether the *casus judicis,* upon which the authority to repeal a charter is based, has accrued.

12. Although it is not necessary that compensation should be actually ascertained and paid before property can be appropriated to public use, yet an adequate remedy must be provided by which it may be obtained without unreasonable delay.

January 14th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW, and SHARSWOOD, JJ.

Quo Warranto.

The information in this case, at the relation of William M. Meredith, Attorney-General of Pennsylvania, was filed in the Middle District, May 11th 1865. It sets out that the Pittsburg and Connellsville Railroad Company have claimed, and yet do claim to have and use, without any lawful warrant, within this Commonwealth the franchise, liberties and privileges following, viz. :—

To be a body politic and corporate by the above name.

To maintain a railroad, called the Pittsburg and Connellsville Railroad, from Pittsburg in the county of Allegheny to Connellsville in the county of Fayette.

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

To extend the said railroad beyond Connellsville to Smithfield, or any other point on the waters of the Youghiogheny, and within the limits of their Commonwealth.

To extend the said railroad to any point they may select in Somerset or Bedford counties, so as to form a connection with the Chambersburg and Allegheny Railroad, or any other railroad that may be constructed.

At the suggestion of the information, a writ was issued to the company to show by what warrant they claimed to have and use the franchise, liberties and privilege aforesaid.

The company pleaded to the information—1, that they claim to be a body politic, &c., by virtue of letters patent issued June 11th 1846 by the governor of Pennsylvania, in pursuance of an Act of Assembly of April 3d 1837, and the several supplements thereto, viz. : The first approved the 18th day of April 1843, embraced in an act entitled, &c. ; which said last act was in part repealed by a resolution approved the 19th day of April 1843, embraced in a resolution entitled, &c. ; and which last-mentioned resolution was repealed by the 6th section of an act approved the 3d day of April 1846, entitled, &c. ; and further, by an additional supplement embraced in an act approved the 10th day of April 1846, entitled, &c. ; and further, by an additional supplement approved the 17th day of April 1846, embraced in an act entitled, &c. ;—and by this warrant the said defendants have used, and still use the liberties, &c., of a body corporate and politic, under the name and style of " The Pittsburg and Connellsville Railroad Company," as they well might and still may, &c.

The second plea is substantially the same as the first. 3. That as to the said liberties, &c., to extend the said Pittsburg and Connellsville Railroad beyond Connellsville to Smithfield, or any other point on the waters of the Youghiogheny, and within the limits of this Commonwealth, they have, and claim to have and use the same under and by virtue of the power and discretion conferred upon them in and by the 7th section of an Act of Assembly, approved April 18th 1843, entitled, &c. 4. That as to the said franchises, &c., to extend the said Pittsburg and Connellsville Railroad to any point they may select in Somerset or Bedford counties, so as to form a connection with the Chambersburg and Allegheny Railroad, or any other railroad that may be constructed, they have, and claim to have and use the same under and by virtue of the powers conferred on them in and by the 6th section of an Act of Assembly, approved the 18th day of April 1853, entitled, &c.

The Commonwealth replied—1. That by anything alleged in the 1st plea she ought not to be barred, &c., because she says that after the issuing of the letters patent, to wit, on the 21st day of April 1853, the defendants, in derogation and evasion of the

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

rightful jurisdiction of the Commonwealth and her courts of justice, and against the trust in bodies corporate reposed by the law of the Commonwealth, were, by their procurement, incorporated in the state of Maryland by an Act of Assembly of that state, passed on the 21st day of April 1853, entitled "An act to incorporate the Pittsburg and Connellsville Railroad Company in the state of Maryland," whereby it was enacted that the Pittsburg and Connellsville Railroad Company be, and was thereby declared incorporate as a body corporate in the state of Maryland, by the name and style of the Pittsburg and Connellsville Railroad Company. And being so incorporated, the defendants, styling themselves a corporation created by the laws of Maryland, and a citizen of that state on the 16th of November 1864, and before the filing of said information to the Term of May 1865, in the Circuit Court of the United States for the Western District of Pennsylvania, impleaded a corporation created by this Commonwealth, by the name and style of the Connellsville and Southern Pennsylvania Railroad Company, and John A. Wright and other citizens of the state of Pennsylvania, and in the said Circuit Court exhibited their certain bill in equity, wherein they alleged themselves to be a corporation duly established by the laws of Maryland, and a citizen of that state, and prayed that said respondents, in said bill named, might be restrained by an injunction issuing out of the said Circuit Court from taking possession of, or in any way interfering with a certain route and road within this Commonwealth, between Connellsville and the dividing line between Maryland and Pennsylvania, and lying south and east of Connellsville, in said bill alleged to be of the said here defendants, and also from instituting or proceeding in any action at law for the recovery of the possession of said route or road, and also praying that a certain Act of Assembly of the Commonwealth, entitled "An act relative to the Pittsburg and Connellsville Railroad Company," passed on the 19th of August 1864, by which certain franchises and privileges theretofore granted to the said here defendants to construct a railway within this Commonwealth, southwardly and eastwardly from Connellsville, had been, by reason of alleged misuser and abuser of the said defendants, revoked and repealed, might be declared null and void, and that the fact of misuse and abuse of the privileges, or any of them theretofore granted by the Commonwealth to the said here defendants might be judicially inquired into ; which said suit in equity is still depending in said court of the United States, &c., whereby the said defendants the franchise, &c., did forfeit, &c.

2. That by anything in the 1st plea she ought not to be barred, &c., because she says that after the issuing of the letters patent, and before the time of the filing of the information, the defend-

ant, without any lawful authority thereof, and in violation of the trust reposed in bodies politic or corporate by the laws of the Commonwealth, did survey and adopt a line for the extension of their railroad from Connellsville beyond the boundaries of this Commonwealth, to wit, to Cumberland, in Maryland, intending there to connect the said extension with the railroad of a certain corporation of Maryland, known as the Baltimore and Ohio Railroad Company; and did proceed to construct, and were, at the time of the filing of the information, engaged in constructing the said extension, with the purpose of connecting the same with the railroad of the said Baltimore and Ohio Railroad Company at Cumberland, whereby the said defendants the franchise, &c., did forfeit, &c.

3. That by anything in the 1st plea she ought not to be barred, &c., because she says that after the issuing of the letters patent, and before the time of the filing of the information, the defendants, without any lawful authority therefor, and in violation of their corporate duty, and the trust, &c., surveyed and adopted a line for an extension of their railroad from Connellsville to a point on the southern boundary line of Bedford county, and there connected the said line with a line there surveyed and adopted for a railroad, extending from the said point on the southern boundary of Bedford county, to a point beyond the limits of this Commonwealth, to wit, Cumberland, &c., and there proceeded to construct, &c., the said extension from Connellsville to the said point in the southern boundary of the county of Bedford, thereby intending to make and provide a continuous line of railroad from Pittsburg via Connellsville to Cumberland aforesaid, whereby the said defendants the franchise, &c., did forfeit.

To 2d plea the Commonwealth imparled.

4. That by anything in the 3d and 4th plea she ought not to be barred, &c., because she says by the Act of Assembly, under which the said defendants were incorporated, entitled, &c., passed the 3d day of April 1837, it was provided that if the said company should at any time misuse or abuse any of the privileges therein granted, the legislature might resume all the rights, &c., thereby granted, &c.; and the Commonwealth further saith, that by the Act of Assembly entitled "An Act relative to the Pittsburg and Connellsville Railroad Company," passed on the 19th day of August 1864, it was recited that by an Act of Assembly, entitled "An Act to incorporate the Pittsburg and Connellsville Railroad Company," approved 3d of April 1837, a corporation entitled The Pittsburg and Connellsville Railroad Company was authorized to be created, by which and the several supplements thereto, said company was empowered to construct a railroad connecting Pittsburg with several of the southern counties of Pennsylvania; and that the purpose of the creation of said

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

company, by its charter and supplements, was the development and improvement of that portion of the state through which it was intended said road was to be constructed;

And the company by said act and supplement created, has failed to complete the road therein provided for, and had so long delayed the construction of said road, that after the lapse of —— years after the granting of full authority by the state, less than one-half of the said line of road has been constructed, and the line east of Connellsville, authorized by the supplement to said acts, had not been completed or prepared for public use;

And that it was due to the people of this Commonwealth, and especially those residing in that portion of the state through which said railroad was intended to pass, that the purpose of the passage of the said act and supplement should be speedily accomplished, and that by the 20th section of said Act of Incorporation it was provided that if the said company should at any time misuse or abuse any of the privileges therein granted, the legislature might resume all the rights, &c., thereby granted;

And that it was further by law provided, that the legislature of this Commonwealth should have power to alter, revoke or annul any charters whenever, in their opinion, it might be injurious to the citizens of the Commonwealth, in such manner that no injustice should be done to the corporations;

And that in the opinion of the legislature said corporation, by the delay referred to, and by the embarrassments and otherwise in which it had come to be involved, had misused and abused the powers by said act conferred;

And that in the opinion of the legislature it was injurious to the citizens of this Commonwealth that the said company should any longer have or enjoy any right, &c., to build any railroad or extension of their railroad southwardly or eastwardly from Connellsville; and that in consequence of the premises it was then designed by the legislature to exercise every right and power them in that behalf enabling, in order that no hindrance or impediment, by reason of location or any other cause, might exist to the free exercise by the legislature of their power to grant the same and other franchises to such corporation as would promptly extend to that portion of the state the benefit of railway communications, and thus develop speedily that section of the Commonwealth which lies southwardly and eastwardly from Connellsville.

And that by the speedy completion of the line or lines of railroad southwardly or eastwardly from Connellsville the interest of the Pittsburg and Connellsville Railroad Company might be materially promoted, through the establishment of a connection between their present finished line and other lines of railway— and it was therefore enacted:—

Sect. 1. That all rights, &c., authorized or created by the Act

[Commonwealth v. Pittsburg and Connellsville Railroad Co.]

of Assembly approved April 3d 1837, authorizing the incorpora-
tion of the Pittsburg and Connellsville Railroad Company, and
all supplements thereto, so far as the same or any of them author-
ize the construction of any railway southwardly and eastwardly
from Connellsville, should be, and were thereby, revoked and
resumed by the Commonwealth of Pennsylvania; and all the
rights, &c., by the said acts and supplements conferred upon the
said corporation for and in respect to all that portion of the lines
southwardly and eastwardly from Connellsville, should be, and
the same were, resumed and put an end to: provided, however,
that no injustice should be done to the corporations, and that they
should, as and for full compensation for all damages and injury,
if to any they might be entitled, receive payment for expendi-
tures made in respect to any work done or constructed upon said
railroad southwardly or eastwardly from Connellsville; and that
the Governor should appoint three persons to appraise the expen-
diture so made, and the amount should be paid to the said Pitts-
burg and Connellsville Railroad Company, by any corporation
thereafter authorized to construct a railway southwardly or east-
wardly from Connellsville; and that the company so paying
should be entitled in their discretion to use the work, &c.

Sect. 2. That it should be lawful for the Pittsburg and Con-
nellsville Railroad Company to make sale to any corporation
thereafter created and authorized to construct a railway south-
wardly or eastwardly of Connellsville of whatever works, &c.

And the Commonwealth says that Smithfield and all other
points on the Youghiogheny, within this Commonwealth, and
within the true intent of the said last-mentioned act, and also all
parts of Somerset and Bedford counties, are situated southwardly
and eastwardly from Connellsville aforesaid, and so the liberties,
&c., in the 2d and 3d pleas mentioned were revoked, &c.

5. That by anything in the 3d plea she ought not to be barred,
&c., because she says more than a reasonable time for the construc-
tion and completion of the extension in the said plea mentioned of
the Pittsburg and Connellsville Railroad has elapsed since the
franchise to extend the same was granted, and that the said de-
fendants have not constructed and completed said extension, but
during all that time have neglected, and still do neglect so to do,
by which nonuser of said franchise the said defendants have for-
feited the said franchise to extend the Pittsburg and Connellsville
railroad beyond Connellsville to Smithfield, or to any other point
on the waters of the Youghiogheny, and within the limits of this
Commonwealth, &c.

6. That by anything in the 4th plea she ought not to be
barred, &c., because more than a reasonable time for the con-
struction and completion of the extension in the said plea men-
tioned of the Pittsburg and Connellsville Railroad has elapsed

Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

since the franchise so to extend the same was granted, and that the defendants have not constructed and completed said extension, but during all that time have neglected, and still do neglect so to do, by which nonuser the defendants have forfeited the franchise to extend the Pittsburg and Connellsville Railroad to any point they may select in Somerset and Bedford counties, so as to form a connection with the Chambersburg and Allegheny Railroad, or any other railroad that may be connected, &c.

The defendant rejoined:—To the first replication to the first plea, 1. That it is not true that these defendants were, by their own procurement, incorporated as a body politic by the state of Maryland by an Act of Assembly of that state, passed on the 21st day of April 1853, &c., but that the corporation created by the said Act of Assembly was and is another and different corporation, distinct in law and in fact, from the corporation of the same name incorporated in Pennsylvania, and defendant in the Commonwealth's said writ of *quo warranto.*

2. That there is not any record of the said supposed suit in equity, in the said replication mentioned, remaining in the said United States Circuit Court, &c., as the Commonwealth hath alleged, &c.

3. That after the said supposed acts of misconduct and usurpation in the said replication alleged against them, and after the return-day of the writ of *quo warranto* in this case, to wit, the 26th day of May 1865, the General Assembly of Pennsylvania, by an act entitled, &c., approved the 17th day of April 1866, did enact as follows:

"Section 1. That the Pittsburg and Connellsville Railroad Company are hereby authorized to change the site of their railroad at any place they may deem expedient, between a point one mile west of their station at Port Perry and their depot at Pittsburg; Provided, that the damage, &c., shall be ascertained and paid, as is provided for in the 11th section of the Act of February 19th 1849," &c.

And the said defendants say that they have accepted and acted under the provisions of the said act, and that the said portion of their road "between a point one mile west of their station at Port Perry and their depot at Pittsburg" was constructed under and by virtue of the powers granted by their said Act of Incorporation, approved the 3d day of April 1837, and its supplements, and is situated west of Connellsville, in the county of Fayette; and that the said Commonwealth has, by the said act herein above recited and set forth, recognised the continued existence of these defendants as a lawful corporation, and has waived any supposed right to the said Commonwealth pertaining by reason of the said supposed acts of misconduct, &c.

4. That after the said supposed acts of misconduct and usurpa-

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

tion, &c., and after the return day of the writ of *quo warranto*, to wit, the 26th day of May 1865, the Commonwealth of Pennsylvania, by her auditor-general and treasurer, has demanded and received from the said the Pittsburg and Connellsville Railroad Company sundry payments of taxes and assessments upon the capital stock, &c., of said company, and particularly, did demand and receive from the said company, on the 10th day of April 1866, a tax upon said company's capital stock for 1865,—said tax being levied and paid in pursuance of the provisions of the act entitled " An Act to equalize taxation upon corporations," approved the 12th day of April, 1859; and did also demand and receive of and from the said company, on the 12th day of January 1867, a tax or assessment upon the tonnage of said company for 1866,— said tax being levied and paid in pursuance of the provisions of the act entitled " An Act to provide additional revenue for the use of the Commonwealth," approved the 25th day of August 1864, &c.

Whereby the said Commonwealth recognised these defendants as a lawful corporation in full being, and waived any supposed right of forfeiture to the said Commonwealth pertaining by reason of the said supposed acts of misconduct in the said replication alleged against these defendants.

To second and third replications to 1st plea:—That the General Assembly of Pennsylvania, by the 7th section of an act, &c., approved the 18th day of April 1843, did enact, " That said company shall have full power," &c., " to select any route from Pittsburg to Turtle Creek which may be deemed most eligible, and may extend said railroad beyond Connellsville to Smithfield, or any other point on the waters of the Youghiogheny, and within the limits of this Commonwealth ;" which said section was afterwards, &c., repealed, but was afterwards re-enacted by the 6th section of an act entitled, &c. And these defendants say, that the waters of the Youghiogheny extend to the boundary line between the states of Pennsylvania and Maryland.

That the General Assembly did further enact by the 6th section of an act entitled, &c., approved the 18th day of April 1853, " That the Pittsburg and Connellsville Railroad Company are hereby authorized to extend their road to any point they may select in Somerset or Bedford counties; so to form a connection with the Chambersburg and Allegheny railroad, or any other railroad that may be constructed."

That the legislature of Pennsylvania did further, by an act, &c., approved the 14th day of April 1863, enact,

" Sect. 1. That all the provisions of the 6th section of an act," &c., " approved the 18th day of April 1853, shall embrace the counties of Fulton and Franklin for all the purposes mentioned in said section."

8 P. F. Smith—3

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

And these defendants say that the said Chambersburg and Allegheny Railroad has never been constructed, nor the company duly incorporated; that the only other railroad constructed or projected in the said counties was and is the railroad extending from Chambersburg, in the said county of Franklin, to the town of Hagerstown in Maryland, which said railroad was built, and is owned by " The Chambersburg, Greencastle, and Hagerstown Railroad Company," a corporation created by the legislature of Pennsylvania, by an act, &c., approved the 17th day of March 1853, whereby the legislature did fully recognise the right of said last-mentioned company to extend their road into Maryland.

And these defendants say that the counties of Somerset, Bedford, Fulton, and Franklin adjoin the state of Maryland, and that a connection made by the road of these defendants with the said Chambersburg and Hagerstown Railroad would directly connect the road of these defendants at the boundary line of this Commonwealth with a railroad of the state of Maryland.

And the defendants say that, ever since the passage of the hereinbefore recited enactments these defendants have continually, and by a series of corporate acts well known to the government of the state of Pennsylvania in all its branches, claimed and avowed a right and an intention to extend their railroad to the boundaries of this Commonwealth, at a point in the county of Bedford, there to connect with any railroad that might be constructed, and particularly with a railroad projected by a corporation of Maryland, known as the Pittsburg and Connellsville Railroad Company, and thereby with the road of the Baltimore and Ohio Railroad Company, at Cumberland; that by the 8th section of the act incorporating these defendants, it was made their duty to cause an accurate survey of said road to be made, and to file a map of said survey in the office of the secretary of this Commonwealth, which map was declared to be sufficient evidence of the course of said road; that these defendants, in pursuance, as they claimed and believed, of the powers conferred upon them by the above-recited legislation, caused an accurate survey of the route of their road to be made, and on the      day of April 1857, caused a map of said survey to be filed in the office of the secretary of this Commonwealth, where the same has remained, &c.: That the route of the road of these defendants, indicated and exhibited in the said map, extended to a point in Bedford county, and there connected with the line of a projected railroad, extending from the boundaries of this Commonwealth to Cumberland, in Maryland, which latter point was indicated by the said map as the eastern terminus of the road of these defendants; that the General Assembly did, by an act, &c., approved the 4th day of April, 1859, enact that the auditor-general should prepare blank forms, and send them each year to every railroad company,

[Commonwealth v. Pittsburg and Connellsville Railroad Co.]

who should, according to said forms, make returns of their operations to the auditor-general, &c., for the preceding year, with a penalty upon the company, should they neglect, &c.

That in pursuance of the provisions of the said act, and following the forms furnished them, they have annually, since the passage of said act, made out and returned to the auditor-general a report, setting forth, among other things, that the length of their main line is 159 miles, and extends from Pittsburg to Cumberland, &c.

That, in 1862, the auditor-general caused an official canal and railroad map of Pennsylvania to be made, and did, with his annual report to the legislature for 1863, transmit a copy of said map : That, in said map, the route of the road of these defendants is exhibited as extending, in a finished condition, from Pittsburg to Connellsville, and, as an unfinished or projected road, to Cumberland, in Maryland.

That, in pursuance of the powers lawfully possessed by them, as they claimed and believed, by virtue of the hereinbefore recited acts, they procured, in 1856, a loan of $1,000,000 from the city of Baltimore, for the avowed purpose of the completion of their road from Connellsville to Cumberland, and thus constituting, with the Baltimore and Ohio Railroad, a connection between Pittsburg and Baltimore, which said connection was the inducement to the city of Baltimore to make said loan ;. that these defendants have used said money wholly within the limits of Pennsylvania, and in the partial construction of the said road between Connellsville and Cumberland ; that the fact of said loan, and the object for which the same was made, were matters of general knowledge in Pennsylvania, were set forth in the annual reports to the stockholders of the Pittsburg and Connellsville Railroad Company, and were known, as these defendants believe, to many of the individuals who constituted, from year to year, the General Assembly of Pennsylvania. That during all this time, while these defendants were acting as hereinbefore mentioned, and inducing others to act, on the faith of the said recited acts of legislation, and of the construction thereof, as claimed by these defendants, the Commonwealth in no wise and at no time objected to or dissented from the construction of her said acts claimed by these defendants, but, in every way and at all times, assented to the said claim of these defendants, and continued till the issuing of the said writ of *quo warranto* to recognise these defendants as a lawful corporation.

To the replication to 3d and 4th pleas jointly. 1. That by the said Act of Assembly, entitled, &c., approved the 3d day of April 1837, and the various supplementary acts, particularly, &c. ; and by due acceptance of said acts by the said company, and the expenditure of money on the faith of said acts, a contract was created between the said Commonwealth and the said Pittsburg

and Connellsville Railroad Company; that under the terms and provisions of the said Acts of Assembly, no absolute and arbitrary right to revoke and resume the privileges was reserved to the legislature; that it was provided in and by the 20th section of the said act, approved April 3d 1837, that the legislature might revoke and resume all and singular the privileges thereby granted, when and if the said company should at any time abuse or misuse the said granted privileges; that there has been no adjudication of the question of the fact of any abuse or misuse by the said company of their said chartered privileges; that there has been no hearing, judicially or otherwise, of the parties interested in the said question of abuse or misuse; that no notice was at any time given to the party accused, and no opportunity offered for a fair trial and a full hearing; that the said Act of Assembly, pleaded by the said Commonwealth in the said replication, and entitled "An Act relative to the Pittsburg and Connellsville Railroad Company," was passed without a valid ascertainment of the fact of an abuse or misuse by the said company of its chartered privileges, impairs the said contract subsisting between the said Commonwealth and the said Company, and obligations thereof, and is in conflict with the 10th section, article 1st, of the Constitution of the United States and with the Constitution of this Commonwealth, and is null and void, &c.

2. That in and by the contract created and subsisting between the Commonwealth and the Pittsburg and Connellsville Railroad Company, by virtue of the Act, &c., approved the 3d day of April 1837, and its various supplements, no right or power to revoke the chartered privileges thereby granted was reserved to the legislature except where, in point of fact, some abuse or misuse of said privileges should be committed by said company; that the Commonwealth has declared by an act of her legislature entitled "An Act supplemental," &c., approved the 11th day of April 1856, that any defect or irregularity in the proceedings of the commissioners appointed by the several Acts of Assembly incorporating the Pittsburg and Connellsville Railroad Company, in taking subscriptions to, and organizing said company, and any defect or irregularity in the proceedings of the board of directors of said company in organizing and conducting the affairs of the said company, so far as the said defect or irregularity may have proceeded from the neglect or omission of the said commissioners or board of directors fully to comply with the requisitions of the said acts of incorporation and their supplements, were and should be thereby remedied and supplied; and that the charter of incorporation of said company should not be affected or invalidated in consequence of such omission or neglect by the said commissioners or board of directors fully to comply with its requirements; that since the date of the said last act, the legislature has passed numerous acts,

recognising the continued existence of these defendants as a lawful corporation, and evincing the satisfaction of the legislature with the conduct and management of the said company (reciting the acts); that when the legislature had thus declared by the Act of April 11th 1856, whatever might have been its rights, up to that time, in regard to any supposed acts of abuse or misuse by these defendants, they were waived and abandoned, and had further declared, by the said act of April 14th 1863, that these defendants were worthy to receive additional privileges, said company proceeded to act, and to induce others to act, on the faith of said act; procured a loan from the city of Baltimore, of bonds of the said city, to the amount of one million of dollars; executed and delivered to the said city, to secure said loan, a mortgage on the entire estate, real and personal, and upon the franchises of said company; constructed during the year 1857 more than 21 miles of road, &c.; leased the Fayette County Railroad, are now operating more than 70 miles of road, more than 12 miles of which are south of Connellsville; have in use 14 locomotives, &c.; have constructed the necessary switches, &c., connected with that portion of their road now in operation; have surveyed their entire route, procured the right of way to that point selected by them in Bedford county as the terminus of their said road; had advertised their unfinished road for contract in the month of March 1864; had placed the same under contract in May 1864, subject only to the removal of legal obstacles; had secured the co-operation of the Baltimore and Ohio Railroad Company, with whose road that of the Pittsburg and Connellsville Railroad Company is to connect at Cumberland by means of the road of a corporation of the same name, incorporated by Maryland, which company have formally agreed to furnish additional capital to these defendants, to the amount of one million of dollars; that during the entire period between the passage of the said act, approved April 11th 1856, and the said 19th day of August 1864, the said company had in no particular and by no act of omission or commission, abused or misused their corporate functions, but had in good faith endeavored, both by the resources in their possession and by efforts to procure additional resources by borrowing, to carry out and fulfil all the duties, and avail themselves of all the privileges devolved upon them by their said act of incorporation and its supplements; and that said act of Assembly entitled " An Act relative to the Pittsburg and Connellsville Railroad Company," passed August 19th 1864, was passed without any act of abuse or misuse of corporate privileges having been committed by the said company, impairs the obligation of the said contract subsisting between the said Commonwealth and the said company, is in conflict with the 10th section of the Constitution of the United States, with the Constitution of this Commonwealth, and is null and void.

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

. To the replication to 3d plea.  1. Substantially as the preceding rejoinder.

2. That by the Act of the 11th day of April 1856, entitled, &c., the legislature of Pennsylvania declared that any defect, &c., was remedied and supplied, and that the charter of incorporation of said company should not be invalidated, &c.  That when their said charter had been thus renewed to them, &c., they proceeded, with the utmost diligence, in the execution of the work intrusted to them. That their road at that time consisted of a single piece of road extending from Connellsville to West Newton, equipped with but two locomotives and two passenger cars; that while said company were thus prosecuting their work in 1857, a great financial revulsion took place, paralyzing, for the time, nearly every form of industry and every unfinished enterprise; that the county of Allegheny and the city of Pittsburg repudiated the payment of their bonds given to the Pittsburg and Connellsville Railroad Company; that thus the market value of the securities held by these defendants was injuriously affected, and the credit and the ability of the company to negotiate further loans, for the time utterly overthrown; that notwithstanding these untoward circumstances, such had been the diligence, &c., of the said company, that, by the year 1861, their road had been completely built from Pittsburg to Connellsville, and equipped with an adequate rolling-stock of 14 locomotives, &c.; the floating debt had been reduced; the switches, &c., for the completed portion of the road, had been built; the route of the road from Connellsville to the point selected as the eastern terminus of the road, had been surveyed, and the company were looking forward hopefully to an early completion of their entire road; that at this juncture the rebellion arrested every unfinished enterprise requiring the expenditure of large means; that affairs thus continued hostile to the efforts of the company to procure further resources wherewith to complete their road, till the spring of 1864; that at that time, the company secured the promise of assistance from the Baltimore and Ohio Railroad Company, which company formally agreed to advance to them additional capital, to the amount of $1,000,000; that they advertised their unfinished road for contract in the month of March 1864, and actually entered into contracts with competent parties for the completion of the said road; that during all this time the legislature of Pennsylvania had continued, from time to time, to pass numerous acts recognising the existence of these defendants as a lawful corporation, and evincing satisfaction with the management of their affairs (reciting several Acts of Assembly); that when they were about to complete their said road, the legislature of Pennsylvania, without notice to them, in April 1864, passed an act entitled "An Act relative to the Pittsburg and

Connellsville Railroad Company," whereby the said legislature declared all the rights and powers of the said company to construct their road south and east of Connellsville, revoked and resumed; that said company, though denying the validity of the said act, and the right of the legislature under the facts of the case, to pass the same, have been thereby disabled from negotiating further loans, and the parties, under promise to advance capital as aforesaid, have been deterred from so doing until the validity of the said act of the legislature shall have been judicially determined; that, not taking advantage of any cause for delay afforded by the passage of said act, they have now an adequate force of workmen engaged upon the tunnel known as " The Sand Patch Tunnel," dividing the waters of the Ohio from those of the Potomac, and are in every proper way making preparations, in event of the pending judicial proceedings being decided in their favor, to finish their road and carry out their corporate duties; and that they have not, by nonuser of the said franchise, forfeited the said franchise to extend the Pittsburg and Connellsville Railroad beyond Connellsville to Smithfield, or to any other point on the waters of the Youghiogheny, and within the limits of this Commonwealth, &c.

The defendants filed two rejoinders to the replication to the 4th plea, setting out the Act of 1856 and other acts which, they averred, waived prior irregularities, &c., denying any subsequent acts of misuser; averring acts done, and contracts made on the faith of those acts; averring also obstacles arising from the commercial and financial condition of the country, together with the repealing Act of 1864, as excuse for any delay and diligence in preparation to prosecute, and in prosecuting the work of their road, and denying any misuser, &c.

The Commonwealth demurred to the first rejoinder to the first replication to 1st plea, stating the following causes of demurrer: That the defendants have offered to put in issue a matter not properly issuable, viz., whether the corporation referred to in the Act of Assembly of the state of Maryland, was and is another and different corporation, distinct in law and in fact from the corporation of the same name, incorporated in the state of Pennsylvania; and that the rejoinder does not tender or take any single material issue upon or out of the said replication, and also that the same is, in other respects, uncertain, informal and insufficient.

And took issue as to second rejoinder to the first replication to 1st plea, averring that there is such a record, &c.

To third and fourth rejoinders to first replication to 1st plea, and to the first and second rejoinders to the replication to the 3d and 4th pleas jointly, the Commonwealth demurred generally.

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

She demurred to the rejoinder to second and third replications to the 1st plea, and stated the following causes of demurrer, viz. : That the said rejoinder is evasive and argumentative; that no certain or sufficient issue can be taken thereon; that it introduces immaterial and irrelevant matters; that it neither traverses nor confesses and avoids the substantial matters alleged in the said replications, and that it is, in other respects, uncertain, informal and insufficient.

And also to the first and second rejoinders to the replication to the 3d plea, and to the first and second rejoinders to replication to 4th plea, and stated the following causes of demurrer, to wit: That the defendants have in the said rejoinders pleaded matters of evidence merely; that the said rejoinders are argumentative, and that no certain or sufficient issue can be taken thereon; that the substantial matters in the said replication are not denied or confessed and avoided; and that the said rejoinders are, in other respects, informal, uncertain and insufficient, &c.

*J. E. Gowen* and *Brewster*, Attorney-General, for Commonwealth, besides the acts referred to in the pleas, cited Stephen on Pleading 240, 278; New York *v.* Fulton Bank, 7 Wendell 412; Charlton *v.* Railway Co., 5 Jur. N. S. 1096. As to the acceptances of the charter from Maryland, Com. Dig. *Franchises*, 93; Rex *v.* London, Shower 280, s. c. Skinner 310, and 4 Mod. 58; 8 Howell's St. Tr. 1271; Grant on Corp. 296, 301; Angell & Ames on Corp. § 774; 1 Bl. Com. 480, 485; 5 Bac. Ab. 210; Commonwealth *v.* Franklin Canal Co., 9 Harris 117; Erie and N. E. Railroad *v.* Casey, 2 Casey 287; Slee *v.* Bloom, 5 Johns. 379; People *v.* Bristol, &c., Turnp. Co., 23 Wend. 236; People *v.* Wash. and W. Bank, 6 Cowen 215; People *v.* Hudson Bank, Id. 217; Rex *v.* Passmore, 3 T. R. 246. As to the suit in the Circuit Court of United States: Ohio and Mississippi Railroad Company *v.* Wheeler, 1 Black 286; The County of Allegheny *v.* The Cleveland and Pittsburg Railroad Company, 1 P. F. Smith 228. As to waiver: Erie and N. E. Railroad *v.* Casey, *supra;* People *v.* Phoenix Bank, 24 Wend. 431; People *v.* Kens. and Midd. Turnp. Co., 23 Id. 193; People *v.* Fishkill *v.* B. Plank Road Co., 27 Barb. 445. As to the effect of the repealing Act of 1864: Crease *v.* Babcock, 23 Pick. 343; Act of February 19th 1849, § 20, Pamph. L. 83, Purd. 838, pl. 11; Miners' Bank *v.* U. States, 1 Greene (Iowa) 523, Angell & Ames on Corp. § 767; State *v.* Curran, 7 Eng. 321; Peirce Am. Road Law 39; 2 Redfield on Railways 219. As to the replication to the 3d and 4th pleas and the rejoinders to them, and the demurrers to the four rejoinders: Stephen on Plead. 183; Bacon's Ab. *Pleading*, H. 1; Com. Dig. *Pleading*, G. 20; Dike *v.* Ricks, Cro. Car. 336. Do the inducements in the rejoinders answer the averments in the replication? Eastern A. Co. *v.* Reg., 22 Eng.

[Commonwealth v. Pittsburg and Connellsville Railroad Co.]

L. & Eq. R. 337; London v. Vanacre, 12 Mod. 269, s. c. 1 Ld. Raymond 496; Peter v. Kendal, 6 B. & C. 703, 1 Bac. 629, Shep. Touch. 193; People v. Hillsdale & Chat. Turnpike, 23 Wend. 254; People v. Niagara Bank, 6 Cowen 196, 211; Terrett v. Taylor, 9 Cranch 43; Com. v. Insurance Company, 5 Mass. 231; Paschall v. Whitset, 11 Ala. 472; People v. Hudson Bank, 6 Cowen 217; Turnpike Company v. McCarty, 8 Ind. 392; Pearce v. Olney, 20 Conn. 557; Buck Mountain Coal Co. v. Lehigh Coal & Nav. Co., 14 Wright 91.

They cited also Bonaparte v. C. and A. Railway Co., Bald. 205.

*J. H. B. Latrobe* and *R. Johnson*, of Baltimore (with whom was *G. Shiras, Jr.*), for defendants.—The Maryland corporation is distinct from that of Pennsylvania: Allegheny v. Cleveland & P. Railroad, Ohio and Miss. Railroad v. Wheeler, *supra*. A state can waive a forfeiture: McConaby v. Turnp. Co., 1 Penna. R. 436; Turnpike Co. v. McConaby, 16 S. & R. 145; Commonwealth v. Union Ins. Co., 5 Mass. 232; Erie & N. E. Railway v. Casey, 1 Grant 283, s. c. 2 Cas. 287; Crease v. Babcock, 13 Pick. 234; McLaren v. Pennington, 1 Paige 107; De Camp v. Eveland, 10 Barb. 81; Miners' Bank v. U. States, 1 Greene (Iowa) 561.

The remedy of the Commonwealth was by *scire facias:* Rex v. Passmore, 5 T. R. 144; Canal v. Railroad, 4 Gill & Johnson R. 1–122; Rex v. Amery, 2 T. R. 515; Terrett v. Taylor, 9 Cr. 43; College v. Woodward, 4 Wheat. 518; Slee v. Bloom, 5 Johns. C. R. 366; Same v. Same, 19 Johns. 456; Trustees v. Hill, 5 Cowan 23; Fletcher v. Peck, 6 Cranch 88; New Jersey v. Wilson, 7 Id. 164; Brown v. Hummel, 6 Barr 86; Monongahela Nav. Co. v. Coon, Id. 379; Bank of Pennsylvania v. Commonwealth, 7 Harris 151. As to the incorporation by Maryland: Commonwealth v. Franklin Canal Co., 9 Harris 117. As to waiver: 1 Inst. 211; 6 Woodfall Land. & Ten. 213; Zouch v. Willingale, 1 H. Bl. 311; Goodright v. Cordwent, 6 T. R. 220; Adams on Ejectment 160; Duppa v. Mayo, 1 Saunders 287, No. 16; Hume v. Kent, 1 Ball & Beatty 554; Read v. Brookman, 3 T. R. 151; Pennant's Case, 3 Rep. 64; Goodright v. Davids, Cowper 803.[1]

The opinion of the court was delivered by

SHARSWOOD, J.—This is an information in the nature of a *quo warranto*, filed by the Attorney-General, calling upon the defendants, by their corporate title, to show by what warrant they claim to have and use the franchise, liberties and privileges following, viz.: To be of themselves a body politic and corporate by the

---

[1] The Reporter regrets that a full understanding of the case required the pleadings to be given so much *in extenso*, as to preclude him from giving a synopsis even of the arguments in the case.

name of "The Pittsburg and Connellsville Railroad Company";
to maintain a certain railroad called the Pittsburg and Connells-
ville Railroad, extending from the city of Pittsburg, in the county
of Allegheny, to the borough of Connellsville, in the county of
Fayette; to extend the said Pittsburg and Connellsville Railroad
beyond Connellsville to Smithfield, or any other point on the
waters of the Youghiogheny, and within the limits of this Common-
wealth; and to extend the said Pittsburg and Connellsville Rail-
road to any point they may select in Somerset or Bedford counties,
so as to form a connection with the Chambersburg and Allegheny
Railroad, or any other railroad that may be constructed.    To this
the defendants have pleaded several pleas, setting forth their
charter under an Act of Assembly, dated April 3d 1837, and
subsequent Acts of Assembly, which they allege confer upon
them the privileges which the Commonwealth claims that they
have usurped.    To these pleas the Commonwealth has replied,
averring various grounds or causes of forfeiture.    To these the
defendants have filed rejoinders, to which the Commonwealth has
demurred.    It will be unnecessary to discuss these pleadings, be-
cause our decision dispenses with any examination of their suffi-
ciency.    It is one of the best-settled rules in pleading that a
demurrer, whether special or general, places the whole record
before the court, and it is against the party who has first failed in
pleading that judgment must be rendered.    If the replications,
therefore, are substantially bad—if they show no legal cause of
forfeiture or deprivation—it matters not whether the rejoinders
are in law formal and sufficient, or otherwise.

I. It is claimed on behalf of the Commonwealth that the de-
fendants have forfeited their charter under the laws of Pennsylva-
nia, by procuring a charter from the Commonwealth of Maryland.
We will assume the fact to be so.    It has been contended that
such an act is inconsistent with the allegiance, which a corpora-
tion owes to the sovereign who created it—that it is *crimen læsæ
majestatis*—a species of treason.    No authority has been cited for
the position.    It seems to be rested on some supposed analogy to
the case of individuals.    A natural-born citizen of one country
may place himself in a very dangerous and equivocal position by
becoming a subject of and swearing allegiance to another sove-
reign.    *Nemo potest exuere patriam* is the rigid rule of the com-
mon law, and so hard did it seem when applied in Macdonald's
Case, Foster 59, that the Crown interposed with a pardon.    But
Macdonald had accepted a commission in the service of the French
king, and was taken in arms against his native sovereign.    For
this he was indicted and convicted of high treason—not for the
simple act of having attempted to transfer his allegiance, which
indeed by force of the maxim referred to he could not.    It has
never been pretended that such an attempted transfer was an

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

overt act of treason, *per se*. Neither can a corporation transfer its allegiance by accepting a charter from another state. It does not thereby throw off its obligations under its original charter, nor can it take shelter under the wing of its new relation from the consequences of any violation of its duties under its old one. The act can in no way harm the Commonwealth. The courts will maintain and enforce all her rights against her own corporation without regard to any immunities she may claim to possess beyond her territories and within the jurisdiction of another state. It is true that a tenant forfeits his estate who attorns to a stranger; but that is because he thereby disclaims holding under his landlord the very subject of the grant. It is the doctrine of the feud which gave the lord a right to resume it when the tenant denied his title. But under that system a tenant might have as many different lords as he had acres of land, and owe fealty and service to each in respect to the respective subjects of grant. His fealty to A. for Whiteacre in no way affected his fealty to B. for Blackacre. A simple and equitable rule was applied when these duties came in conflict. *Si vero vasallus plures dominos habuerit inter se armis contendentes, qui æquiorem causam armorum habet, eum juvabit; si de æquitate non constiterit, antiquiorem:* Cragii Jus Feodale., Lib. 2, Drig. 2, § 17. Has it ever been suggested that the grantee of a patented invention from one country would by the general principles of law, independently of express legislative provision, forfeit his title by applying for and obtaining a patent for the same invention in another country?

A citizen of Pennsylvania may doubtless hold a border farm, the title to part of which he derives from this state and part from Maryland. Though the conditions and terms of each grant may be widely different, there can be no conflict. They each refer to a different subject-matter. *Quando duo jura in una persona concurrent æquum est ac si essent in diversis.* We are of the opinion that this cause of forfeiture is not sustained.

II. Another ground upon which the Commonwealth demands judgment is, that the defendants, under cover of their Maryland charter, have instituted proceedings in the Circuit Court of the United States for the Western District against another corporation created by this state and other persons, praying that an act of the legislature may be declared null and void. The premises for the purposes of this case may be safely admitted that a corporation which undertakes to drag its sovereign, *ad forinsecus examen,* before the bar of the tribunals of another sovereign, violates its first and paramount duty, and thereby subjects itself to the extremest consequences. But the next step in the argument fails. The Circuit Court of the United States is not the court of another sovereign. The Federal Constitution is the constitution of this state, having been ratified and adopted by the sovereign act of

'[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

the people in convention, December 12th 1787. They made it irrevocably their own by their entering into a solemn compact with the peoples of their sister states—binding them for all time—unalterable in any other mode than that pointed out by its own terms. The able and eminent first chief justice of this court, in clear and emphatic language, declared, at a very early day, this fundamental truth of our political system: "The government of the United States," said McKean, C. J., "forms a part of the government of each state:" Respublica *v.* Cobbett, 3 Dall. 473. It follows that its courts are the courts of each state; they administer justice according to the laws of the state as construed and settled by its own supreme tribunal. This has been more than once solemnly determined by the Supreme Court of the Union to be the rule of their decision, whenever the construction of the Constitution of the United States, treaties or Acts of Congress does not come in question: Shelby *v.* Guy, 11 Wheat. 361; United States *v.* Morrison, 4 Pet. 124; Green *v.* Neal, 6 Id. 291; Leffingwell *v.* Warren, 2 Black 599. In this last class of cases the Supreme Court of the United States is the tribunal of the last resort, in which the judgments and decrees of the highest courts of the respective states upon such questions are to be reviewed. Indeed, by being sued in an inferior court of the United States, upon a question involving the validity of an Act of Assembly, the grantees of the state have an advantage which in a state court they do not possess. In the Supreme Court of the state, if the decision pronounced is against the constitutionality of the Act of Assembly relied on, their judgment is final and conclusive: for, by the 25th section of the Judiciary Act of Congress, passed September 24th 1789, it is only "where is drawn in question the validity of a statute of or an authority exercised under any state, on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of such their validity," that a final judgment or decree in any suit in the highest court of law or equity in a state can be carried for review to the Supreme Court of the United States. The Commonwealth has no right to complain that the Circuit Court in a case properly within its jurisdiction was invoked by the defendants to pass upon the constitutionality of her acts of legislation. Were those acts held to be valid in her own highest court, they could be carried by writ of error to the Supreme Court of the United States as the court of last resort, and to the final judgment of that tribunal she must submit. She may herself appeal from the decree of the Circuit Court, if adverse to her, which she cannot do from this court. The defendants violated no duty which they owed to Pennsylvania in commencing suit as a Maryland corporation in the Federal court having jurisdiction. A citizen of Pennsylvania, holding land under a grant

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

from Maryland, is guilty of no breach of allegiance, express or implied, by the exercise of his right of resorting to the tribunals of the Union, even though the defendant against whom he sues the process is a grantee from Pennsylvania. We think that the Commonwealth has failed to sustain this ground.

III. A third cause of forfeiture averred is that the defendants intend to connect their road with a railroad in Maryland, and are engaged in constructing an extension with the purpose of connecting the same with the railroad of the Baltimore and Ohio Railroad Company. We might pass this point with the remark that no mere intention or purpose in a corporation to violate its duty can constitute a case of forfeiture. Its officers and managers have, like individuals, a *locus penitentiæ*. They may avail themselves of it. The design clearly evinced to do an unlawful act may justify the interposition of a court of equity by a process of injunction, but it would be unjust before the act was consummated to visit the corporate body itself with the extreme penalty of civil death and confiscation. We prefer, however, to rest our decision in this cause upon reasons which will make it final. Upon the proper construction of the various Acts of Assembly authorizing these defendants to extend their road south and east from Connellsville, we are of the opinion that they are licensed by the legislature to form a connection with the railroad of the Baltimore and Ohio Company. By the Act of April 18th 1843, they were authorized to extend their road to " any point on the waters of the Youghiogheny, and within the limits of this Commonwealth," and the fact stands admitted on these pleadings that the waters of the Youghiogheny extend to the boundary line between the states of Pennsylvania and Maryland.

So by the Act of April 18th 1853, the defendants were empowered " to extend their road to any point they may select in Somerset or Bedford counties ; so to form a connection with the Chambersburg and Allegheny Railroad, or any other railroad that may be constructed ;" and also by the Act of April 14th 1863, the provisions of the act immediately preceding are extended to the counties of Fulton and Franklin for all the purposes therein mentioned—that is, for the purpose of connecting with any other railroad. All these counties are border counties—their southern boundary is Mason & Dixon's line—and here is an express and unlimited power to connect with any other railroad not simply in the said counties, but so as to form such a connection which may as well be at the state line as in any other part of the counties named. Besides all which, it appears in fact by admission on this record that the only railroad projected or constructed in the counties of Fulton or Franklin is the railroad extending from Chambersburg to Hagerstown in the state of Maryland. We do not, therefore, doubt that the defendants were expressly licensed

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

by the legislature to connect with a railroad in Maryland at the state line.

IV. The fourth and last position which has to be encountered is that by the Act of Assembly passed August 19th 1864, all the rights, powers, franchises and privileges conferred upon the defendants "for and in respect to all that portion of the lines of railway southwardly and eastwardly from Connellsville were resumed, revoked, repealed and put an end to." By the 20th section of the original act of incorporation of April 3d 1837, it was provided that "if the said company shall at any time misuse or abuse any of the privileges herein granted the legislature may resume all and singular the rights and privileges hereby granted to the said corporation." It might perhaps be plausibly argued that as this reservation is expressly confined to the rights and privileges thereby granted, it did not extend to those subsequently conferred absolutely and without any reference to such reservation. It will be better, however, to consider it as conceded by the pleadings, that it was intended to apply not only to the privileges granted by the original act, but to all which by supplements might subsequently be incorporated therein. The questions which naturally arise upon the construction of this provision are two. 1. Is the legislature constituted the sole and exclusive judge of the fact of misuse or abuse, upon which their power to revoke is conditioned? and 2. If not, what effect ought to be given to their act?

As to the first question, upon the ordinary rules applied in the interpretation of language, no difficulty could arise. If this were a contract between man and man, it could not be pretended that when one party reserves the power to rescind in a certain event, he is thereby constituted the judge of whether the event has occurred. It is a condition precedent to the exercise of the power, and the party claiming it must prove affirmatively the existence of the fact. What difference does it make that the state is one of the parties? She has entered into this contract through the legislature, and in the decision of all questions of fact which may arise upon it, the judiciary department must be invoked as in other cases. The power of the legislature in grants and contracts is not like the power of the English Parliament. It is limited and restrained by the provisions of the Federal and State Constitutions, so that it cannot impair contracts either made by itself or others. It corresponds more properly to the English Crown, as to which it is certainly the established law of that country that the king cannot derogate from his own grant, and when an express power is reserved in a certain event or upon certain conditions, it must be proved affirmatively that the event has occurred or the condition been fulfilled: The Eastern Archipelago Company *v.* The Queen, 2 E. & B. 856. The current of

American authorities certainly sustains this doctrine: Crease v. Babcock, 23 Pick. 334; Commonwealth v. Essex Co., 13 Gray 239; The Delaware Railroad Company v. Tharp, 5 Harrington 454; The State et al. v. Curran, 7 English (Arkansas) 321: with one exception, Miners' Bank v. The United States, 1 G. Greene's Rep. (Iowa) 553. In The Erie and North East Railroad Company v. Casey, 2 Casey 287, at the close of the opinion of the court by C. J. Black, he gives what he terms a "brief recapitulation of the main points in the case" to make the grounds of the judgment plainer: "1. This charter was granted with a reservation of the right to repeal it, if the franchise should be abused or misused; 2. We are satisfied that in point of fact those franchises were abused and misused; 3. After that event happened the General Assembly was invested with full power to repeal the charter, and the corporators held their franchises from the state merely as tenants at will, in the same manner as if there had been an unconditional reservation of the right to repeal." After so clear an enunciation by the court itself of the conclusions at which they had arrived, it would be altogether a work of superogation to examine and analyze the reasons upon which they are based. That case must be considered an authority in this state for the position that the legislature is not the final judge of whether the *casus foederis*, upon which the authority to repeal is based, has occurred.

Such has been the doctrine upon which the legislature itself has acted—for which at least two memorable instances in its history may be cited. A company by the title of "The President and Managers of the Harrisburg Canal, Fire Insurance and Water Co.," was incorporated by an Act of March 27th 1823, with a clause in the same words as that now before us. In 1826 a difficulty occurred between this company and the first board of canal commissioners in regard to the location of the Pennsylvania Canal. The matter was brought before the legislature by a message from the governor, and by them referred to a joint committee of both houses. The report of that committee is to be found in the Senate Journal, 1825–6, p. 524. After stating that upon an examination of the facts they had come deliberately to the conclusion that the company had abused its privileges, they say, "Your committee believe that such misuser has already taken place; but they are not disposed to recommend to the Senate an immediate and unqualified exercise of the power reserved to the legislature in such circumstances; they prefer leaving the rights of the company to be adjusted in the form of law, and by the ordinary tribunals of the country. A bill is herewith submitted for effecting these objects by authorizing the Supreme Court to entertain proceedings to be instituted by the attorney-general for testing the original validity of the letters patent granted by the governor,

and ascertaining whether the charter of the company has been forfeited by misuser or otherwise." This bill became a law, Act of April 5th 1826, Pamph. L. 213. In the session of 1832–3 petitions were presented for the repeal of the charter of the Conestoga Navigation Company, which had been incorporated March 3d 1825 with the same reservation of power as is contained in the charter of the defendants: Pamph. L. 1824–5, pp. 46, 56. These petitions were referred in the House to the Judiciary Committee, at the head of which was Mr. McCulloch, of Franklin, one of the foremost lawyers of his day in the state. His report (House Journal, 1832–3, vol. 2, 757) is an able and exhaustive argument in favor of the inviolability of charters; and upon the particular point now under consideration it is remarked: "With these views of the subject, the committee are of opinion that measures should be taken to invest the courts with power to try and determine by due course of law all questions respecting the forfeiture of charters by misuser, nonuser or abuse of their privileges. The reservations in acts of incorporation of a power in the legislature to repeal the law 'if the corporation shall misuse or abuse its privileges,' or 'if it should prove injurious to the Commonwealth,' can be no objection to the proposed course; for still there ought to be a competent tribunal to try the facts of abuse or misuse of the privileges or the causes which have rendered them injurious." I may also refer, as showing the same views in the legislature, to the preamble of the act to repeal the charter of the Erie and North East Railroad Company, approved October 6th 1855, Pamph. L. 1856, p. 705. These instances in our legislative annals are referred to as showing that the General Assembly has not been inattentive to this subject, and has been far from claiming an absolute right to decide conclusively upon the facts of misuser or abuse.

2. What effect then are we to give to the Act of August 19th 1864? It may be conceded that from that respect which is due by one co-ordinate branch of the government to another, this court ought to presume that the legislature did not exercise its reserved power of repeal without satisfying itself, after an impartial investigation of the facts, and an opportunity given to the defendants to be heard in their own defence, that the case had occurred upon which alone its interposition could be justifiable. We may assume for the purposes of this cause that the act is primâ facie valid, and that the burden of proving the negative is cast by it upon the defendants. This is certainly, under the decisions, as rigorous a rule as ought to be applied. How then stands this question upon the record?

To the Commonwealth's replication to the third and fourth pleas alleging that defendants' right to extend their road beyond Connellsville was revoked and annulled by the Act of August

[Commonwealth v. Pittsburg and Connellsville Railroad Co.]

19th 1864, the defendants have filed a rejoinder, setting forth the Act of April 11th 1856, by which it was provided that all defects or irregularities of the board of directors of said company, so far as they may have proceeded from the neglect or omission of the said board fully to comply with the requisitions of the acts of incorporation and their supplements, were, and should be thereby remedied and supplied—and that subsequently, on the faith of that act, they had procured a loan from the city of Baltimore of bonds of the said city, to the amount of $1,000,000, and had proceeded to take measures to fulfil the objects of the legislature, specifying particularly and affirmatively what they had done, and averring in conclusion, that during the entire period between the passage of the said Act of April 11th 1856, and the said Act of August 19th 1864, the said company had in no particular, and by no act of omission or commission, abused or misused their corporate functions and powers, but had in good faith endeavored, both by the resources in their possession and by efforts to procure additional resources by borrowing, to carry out and fulfil all the duties and avail themselves of all the privileges devolved upon them by their said act of incorporation and its supplements.   To this rejoinder the Commonwealth has filed a general demurrer.

As this demurrer unquestionably admits the truth of all the facts averred in the rejoinder, it leaves but one question open for consideration, namely, whether upon the true construction of the Act of April 11th 1856, called in the argument the condoning act, all misuse or abuse of its corporate privileges by the company before that date was pardoned and released.   It was certainly competent to the legislature to do this.   Its object evidently was to give security to those, who should thereafter advance their money to the corporation, and when it not only provided that any defect or irregularity proceeding from the neglect or omission of the directors fully to comply with the act of incorporation and its supplements should be remedied and supplied, but that the charter of incorporation of said company should not be affected or invalidated in consequence of such omission or neglect,—it is impossible to resist the conclusion that all right on the part of the Commonwealth to insist on a forfeiture for anything done or omitted to be done before that time was released.   If this be so, then we have no difficulty in saying that upon these pleadings it is admitted that no misuse or abuse had taken place, which would give any constitutional right to the legislature under the 20th section of the original act of incorporation, to resume the rights and privileges granted to the defendants.

It has been earnestly contended by the Attorney-General, that if the Act of August 19th 1864 was not within the power reserved, it ought nevertheless to be sustained as a constitutional

8 P. F. SMITH—4

assertion of the right of *eminent* domain. Admitting for the purposes of the case that the franchises were within this high power, and admitting, what some general words in the preamble may seem to warrant, that the legislature meant to exert it, the question still remains, has it been constitutionally exercised in this instance.

If a franchise is property, it has value as such; and the 10th section of the 9th article of the Constitution of this Commonwealth has declared, "nor shall any man's property be taken or applied to public use, without the consent of his representatives, and without just compensation being made." It has been held more than once by this court and may be regarded as firmly established, that though it is not necessary that the compensation should be actually ascertained and paid before the property is appropriated, it is requisite that an adequate remedy should be provided by which the individual can obtain compensation without any unreasonable delay: Pittsburg *v.* Scott, 1 Barr 309; Com'rs of Kensington *v.* Wood, 10 Id. 93. Let us examine then the Act of August 19th 1864, to ascertain whether the constitution in this respect has been obeyed. It provides that "they (the defendants) shall, as and for full compensation for all damages and injury done, if to any they can or may be entitled by the provisions of this act, receive payment for expenditures made in respect to any work done or constructed upon any lines of the said railroad, southwardly or eastwardly from Connellsville; and the Governor of the Commonwealth shall appoint three competent persons to appraise and value the expenditures so made, and the amount thereof, when so appraised and certified to him in writing by the parties so appointed, shall be paid to the said Pittsburg and Connellsville Railroad Company, by any corporation or corporations hereafter authorized to construct a line or lines of railway southwardly or eastwardly from Connellsville; and the company so paying shall be entitled, in their discretion, to use the work so paid for as part of the line of their railway." These provisions are altogether insufficient, illusory and unconstitutional. There is no direction whatever for a valuation of the corporate franchises and privileges attempted to be resumed for the public use. Even in regard to the actual tangible property taken—the lines of railway—the rule of valuation and appraisement is inadequate and unjust. It would be no just compensation to an individual to pay him for his land and improvements merely what they had cost him. Their value may have been doubled in the lapse of time and by the change of circumstances. And finally, that the defendants should be turned over for their damages even thus inadequate to an action against some company thereafter to be incorporated, is an illusory remedy, and necessarily accompanied with unreason-

[Commonwealth *v.* Pittsburg and Connellsville Railroad Co.]

able delay. It is clear, then, that the right of eminent domain has not in this instance been constitutionally exercised.

In regard to the replications, which set up as a ground of forfeiture, nonuser, or that more than a reasonable time has elapsed for the construction and completion of the extension of the defendants' road beyond Connellsville, the facts pleaded in the rejoinder negative such nonuser. We think these facts forming the inducement to the special traverse, constitute a sufficient answer to the charge contained in the replications, and the demurrers admit their truth. This ground was not pressed in the concluding argument on behalf of the Commonwealth, and we do not deem it necessary to enter upon it now at large.

We have given to all the points presented by the Commonwealth the most careful consideration, and on the whole are of opinion that they have not been sustained.

Judgment for the defendants.