IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1888.

WILLIAMSPORT PASS. RY. CO. v. WILLIAMSPORT.

APPEAL FROM THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, IN EQUITY.

Argued March 12, 1888—Decided April 16, 1888.

A street passenger railway company incorporated in 1863, with nothing in its charter making the consent of councils a prerequisite to the exercise of its powers in the extension of its road, prior to 1874 had constructed and operated its road in but a few of the streets it was authorized by its charter to occupy. In 1887, being about to extend its tracks into the unoccupied streets, the city filed a bill for an injunction on the ground that the consent of councils had not been obtained: *Held*,

1. That the fourth constitutional amendment of 1857, providing power in the legislature to alter, revoke or annul any incorporating charter thereafter conferred, gave no arbitrary power to repeal such charters at will, and even where a moving cause was made to appear, such alteration and revocation must be so made that no injustice should be done to the corporators: Hays v. Commonwealth, 82 Pa. 523, approved.

2. That the unrestricted right of the company to lay its tracks in the streets authorized by its charter, was not repealed by § 9, article XVII., of the constitution of 1874, and § 16, act of May 23, 1878, P. L. 111, providing that no street passenger railway should be constructed within the limits of any city, borough or township, without the consent of the local authorities thereof.

3. Charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation: Hays v. Commonwealth, 82 Pa. 523.

VOL. CXX—1                               (1)

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; TRUNKEY and GREEN, JJ., absent.

No. 400 January Term 1887, Sup. Ct.; court below, No. 4 March Term 1887, C. P. in equity.

On February 23, 1887, the city of Williamsport filed a bill in equity against the Williamsport Passenger Railway Company, the prayers whereof were:

1. That an injunction may issue, temporary until hearing and permanent thereafter, restraining said company defendant, its officers, employees, agents, contractors and servants from digging up any part of West Third street, or any other street in said city, or constructing any railroad upon said street or any of the streets of said city.

2. Such further and other relief as the necessity may require and which shall seem meet.

A preliminary injunction was granted as prayed for and February 28, 1887, fixed for further hearing upon its continuance or dissolution, on which day an answer was filed together with affidavits presented on each side.

At the argument on March 1, 1887, the following were the undisputed facts and the positions of the parties as appeared from the pleadings and affidavits:

The plaintiff, the city of Williamsport, is a municipal corporation of the fourth class, chartered under and by virtue of an act of assembly, commonly called the Wallace law, approved May 23, 1874, P. L. 230, and its several supplements. Prior to its acceptance of said act of assembly it was a city incorporated by an act of assembly which became a law January 15, 1866, P. L. 1231; before which time it was called the borough of Williamsport.

The defendant, the Williamsport Passenger Railway Company, was incorporated by an act of assembly approved April 15, 1863, P. L. (1864), 1080, whereby inter alia it was given power "to lay out and construct a railway, commencing at Third and Market streets, in the borough of Williamsport, Lycoming county, and continuing westwardly along Third street or any other street in said borough, to the village of Newberry, in said county, and eastwardly through said Third street, or any other street or streets in said borough, as may

be deemed advisable by the said company, to and through the borough of Montoursville, with the right to construct branches to the main track of said passenger railway through any of the said streets of the borough of Williamsport, with single or double track, etc., etc. . . . . . provided that the borough councils may, from time to time by ordinance, establish such regulations in regard to said railway as may be required for grading, culverting and laying of gas and water, in and along said streets and to prevent obstructions thereon." It was also provided that said company in constructing its said road should " conform to the grades now established, or hereafter to be by law established, of the several streets, roads, or avenues traversed by said road."

Pursuant to this authority the company defendant organized, laid out and constructed a railway commencing at Third and Market streets in said borough, thence westwardly, in the direction of the village of Newberry, by Third street to Pine street, by Pine street to Fourth street, and by Fourth street to a point near its intersection with the Philadelphia and Erie Railroad, and from the starting point at Third and Market streets eastwardly, in the direction of the borough of Montoursville, on said Third street, to a point near its intersection with the Philadelphia and Erie Railroad. The company also constructed branches on Campbell street and Herdic street, and expended large sums of money in the construction, repair and maintenance of its road, and has had the same in operation since the year 1864, but has not since that time built any extensions of its main lines or branches into or through any other streets or parts of streets of said borough, now city.

On February 9, 1887, the company defendant determined to lay additional branches to its main line in streets not heretofore occupied by it, and entered into contracts with competent parties to furnish all material and do said work, in pursuance of which the company incurred considerable expense and liability, and on the 21st day of February, 1887, proceeded to place its rails upon and along the streets it intended to occupy by other proposed branches.

After giving the company notice not to put its rails on said streets nor proceed with said work, the city of Williamsport filed her bill in equity in this case, wherein, it was charged:

Opinion of Court below.

That said company defendant holds its charter subject to section 9 of article XVII. of the constitution of 1874, and section 16 of an act to provide for the incorporation and government of street railway companies in cities of the third, fourth and fifth classes, etc., approved May 23, 1878, P. L., 111, which sections of the constitution and act of assembly are in the same words as follows : "No street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of the local authorities thereof."

It was further charged in said bill that the company defendant had not obtained the consent of the local authorities of the city of Williamsport to construct its proposed extensions ; that without such consent the occupation of its streets by said company would be unlawful, and therefore would be a public nuisance, etc. The answer substantially admitted the facts stated in the bill. It admitted that defendant had not obtained the consent of the local authorities of the city, and averred that such consent was not necessary. It denied that the construction of said branches would be without authority of law, etc., but averred that the defendant had lawful authority to construct said branches, and therefore that such occupation of the streets would not be a public nuisance, wherefore it was prayed that plaintiff's bill be dismissed, etc.

On March 4, 1887, the court, CUMMIN, P. J., finding the foregoing facts, filed the opinion and decree following :

On the argument many questions were discussed, which it is not deemed necessary to examine seriatim, but which are disposed of by the following general observations :

It is not charged that the company defendant threatens or intends to disregard the established grades of the streets it desires to occupy; nor that it intends by its proposed branches to violate or disregard any ordinance of the city regulating its occupancy of said streets. It does not appear that the city has ever adopted any regulations or ordinance on the subject.

The village of Newberry and the borough of Montoursville did not adjoin the borough of Williamsport, hence the company defendant had authority to cross the intervening space to reach its termini, and this right could not be affected by the extension of the borough or city limits so as to include the whole or any part of such intervening territory.

If the section of the constitution and the act of assembly before recited do not apply to the defendant, then its right to determine what streets of the city it will occupy is vested in the company, and indeed is expressly reserved to the company in its charter, where it is declared that it may occupy such street or streets as may be deemed advisable by the company.

The company defendant was incorporated in 1863, and is subject to the provisions of the act of assembly of May 3, 1855, P. L. 423, and is also subject to the following constitutional amendment of 1857: " The legislature shall have the power to alter, revoke or annul any charter of incorporation hereafter conferred by or under any special or general law, whenever in their opinion it may be injurious to the citizens of the commonwealth; in such manner, however, that no injustice shall be done to the corporators."

No rule of law in this state requires a railroad corporation to exercise all the powers contained in its grant in the beginning, or declares that those powers which are not then exercised are lost, unless the statute expressly provides for the forfeiture of a charter at the suit of an individual; only the government can assert the right to have it forfeited, and then it must be done in a proper proceeding commenced for that purpose.

The courts interfere by injunction to prevent wrongs of a repeated and continuing character. In a case where the public rights, or private rights secured by statute or by contract are invaded, and an injunction asked for in order to protect them, no question of the amount of damage is raised; but simply one of right. When railroad companies or individuals exceed their statutory powers in dealing with other people's property, no question of damage is raised, when an injunction is applied for, but simply one of an invasion of right: Commonwealth v. P. & C. R. Co., 24 Pa. 159; Penn. R. Co.'s Appeal, 115 Pa. 514.

This brings us to the consideration of the real question in this case, viz.: Has the company defendant lawful authority to extend its lines or build branches in the streets of the city of Williamsport without the consent of the city authorities? If it has such authority, then the preliminary injunction granted must be dissolved and the plaintiff's bill dismissed.

If it has not such lawful authority, then the preliminary injunction must be continued. The original charter of the company does not require that the consent of the local authorities shall be obtained to allow it to build its tracks in the streets; on the contrary, this power is expressly given to the company.

The Williamsport Passenger Railway Company is certainly not required to obtain the consent of the city authorities to occupy its streets, unless its charter is to be construed as subject to section 9 of article XVII. of the constitution of 1874, or the statute of 1878 in the same words, viz.: "No street passenger railway shall be constructed within the limits of any city, borough or township without the consent of the local authorities." Whether or not this constitutional or statutory prohibition applies to the company defendant, depends upon whether the reasoning and the authority of the Supreme Court in the cases of Penn. R. Co. v. Duncan, 111 Pa. 352 and P. & R. Co. v. Patent, 17 W. N. 198, apply to the case at bar. Prior to these decisions it had been frequently held that railroad companies, whose charters, like the Pennslyvania Railroad Company, and Philadelphia and Reading company, in the exercise of the power of eminent domain, required them to make compensation for land entered upon, used or taken, were not liable for consequential damages.

By the cases cited it is decided that the companies therein named are now liable for consequential damages, because their charters are to be construed as subject to section 8, article XVI., which declares that "municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction of their works, etc." The effect of these decisions is, that the charters of the companies named, which required that they make compensation for lands entered upon, used or taken, must now be so read that they shall make compensation for lands entered upon, used, taken, injured or destroyed. Mr. Justice GORDON, in delivering the opinion of the court in the case of the Penn. R. Co. v. Duncan, supra, after giving at length his reasons for the conclusions arrived at, says: "We, therefore, rest our decision on what we deem its legitimate ground, that is, that the

act of 1855 and the constitutional amendment of 1857 must be taken to be as much a part of the defendant's organic law as though written therein, and as a consequence as well the constitutional convention (of 1873) as the legislature had the power to subject the company's exercise of the right of eminent domain to the provision that it make just compensation, not only for the property which it might choose to take in the strict sense of that word, but also for such as it may injure or destroy."

After a careful study of the cases just cited, containing as they do the last deliverance of our Supreme Court on the subject, I am of opinion that they rule the case at bar. Thus I arrive at the conclusion that the Williamsport Passenger Railway Company may not lawfully construct its railways on the streets of the city of Williamsport without the consent of the city authorities.

Preliminary injunction continued until final hearing or further order of the court.

The company defendant then took this appeal, assigning as errors, (1) the granting of the preliminary injunction as prayed for; (2) the order continuing the preliminary injunction till final hearing or further order of the court.

*Mr. H. C. McCormick* (with him *Mr. S. T. McCormick, Mr. J. G. Reading, Mr. Samuel Linn* and *Mr. W. D. Crocker*), for the appellant:

Whilst, on behalf of the defendant company, we concede that it is subject to the provisions of the act of May 3, 1855, P. L. 423, and of the fourth constitutional amendment of 1857, and, as a result, the right of the legislature to "alter, revoke or annul" its charter in the manner especially provided for in said act, yet we aver that the legislature has never exercised such right as to the defendant company, its charter has never been altered, revoked or annulled and its powers, originally conferred by its act of incorporation, remain undiminished and unimpaired.

1. Neither § 9, article XVII. of the constitution of 1874, nor the act of May 23, 1878, P. L. 111, both providing in the same language that, "No street passenger railway shall be constructed within the limits of any city, borough or town-

ship without the consent of the local authorities thereof," can by any known rule on interpretation be made to apply to defendant company's charter. The general rule is that no statute, however positive in its terms, will be construed as designed to interfere with existing contracts, rights of action or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared; and, though the words of a statute are broad enough in their literal extent to comprehend existing cases, they must yet be construed as applicable only to cases that may thereafter arise, unless a contrary intention be unequivocally expressed: Potter's Dwarris, 162, n. 9, citing Butler v. Palmer, 1 Hill 403; Johnson v. Burrell, 2 Hill 238; Dash v. VanKleeck, 7 Johns. 499. Our own cases are to the same effect: Taylor v. Mitchell, 57 Pa. 209, and cases cited therein.

2. But, conceding for the sake of the argument that the act of 1878 and the said constitutional provision, are by their terms to be construed as retroactive, yet do they authorize the granting of the injunction in this case? In numerous cases, the charter of a private corporation has been held to be, in effect, a contract between the commonwealth and the grantee of the franchise, like every other contract, to be judged of by its terms and construed by established rules. The act of 1855 applies to all charters thereafter to be granted, and our case is to be considered as though the language of that act was in terms included in our charter, the right being reserved to alter, revoke or annul it, "whenever in the opinion of the legislature it may be injurious to the citizens of the commonwealth." Then, can the legislature, or a constitutional convention whose powers in this regard are no greater than those of the legislature, determine without any notice to the corporation intended to be affected, that its charter is injurious to the citizens of the commonwealth? On the contrary, it has been decided by this court, that the new constitution left private corporations just where it found them, and that neither the legislature nor the constitutional convention, which is said to be of equal authority, can be the final judge of whether the casus foederis, upon which the authority to repeal is based, has occured: Hays v. Commonwealth, 82 Pa. 523; Commonwealth v. Railroad Co., 58 Pa. 26.

3. Moreover, the act of 1855 provides that the exercise of the power to alter, revoke or annul, shall be "in such manner, however, that no injustice shall be done to the corporators." The grant of the franchise to the company was as a whole, and there was nothing in the law, as will presently appear, that required it to avail itself of all its powers at one time, but it might from time to time construct its road and occupy the several streets mentioned in the charter as the requirements of the public demanded. Large sums of money are invested upon the faith of such charters, and if valuable rights may be taken away in so summary a manner under the act of May 23, 1878, and the new constitution, then the remedy is worse than the disease, and it matters not that the state is one of the parties: Commonwealth v. Railroad Co., 58 Pa. 46.

4. The bearing of the cases, Penn. R. Co. v. Duncan, 111 Pa. 361, and P. & R. R. Co. v. Patent, 17 W. N. 198, was not made apparent. The question in those cases was, not whether there was any impairment of corporate powers, but whether those corporations were subject to the new provision as to consequential injuries, in the future exercise of their franchises. Moreover, in Penn. R. Co. v. Duncan, the opinion uses this language: "We also agree that the framers of the constitution of 1874, did not intend . . . . . to repeal the provisions of any charter theretofore granted." Another broad distinction is, that in that case the constitutional provision affected the remedy and not the franchise. A corporation has no vested right in a remedy: Long's App., 87 Pa. 118; Penrose v. Canal Co., 56 Pa. 46; Kenyon v. Stewart, 44 Pa. 179.

5. The fact that the defendant company did not occupy immediately after its creation all the streets it was authorized to occupy, cannot be urged as a reason why it should not exercise the right now. The right is not affected by non-user: Peoples' Pass. Ry. Co. v. Baldwin, 14 Phil. 231; P. W. & B. R. Co. v. Williams, 54 Pa. 103; Black v. Railroad Co., 58 Pa. 249. Moreover, the question of the forfeiture of a franchise can be raised only by the state in a proper proceeding had for that purpose: C. & P. R. Co. v. Speer, 56 Pa. 326; Irvine v. Lumbermen's Bank, 2 W. &. S. 202; 3 Wood's Railway Law, § 497.

*Mr. H. W. Watson*, City Solicitor, (with him *Messrs. J. J.* and *V. H. Metzger*), for the appellee:

1. The act of 1878 and the constitutional provision plainly apply only to the railways or railroads, to roads or parts of roads not constructed. "No street passenger railway shall be constructed:" By whom? Evidently, by any company, now chartered or hereafter to be chartered. Section 21, article III. of the constitution provides: "No act of the general assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property," etc. In Lewis v. Hollahan, 103 Pa. 425, this court said: "The language thus employed cannot fairly be restricted to future legislation alone." We submit that the defendant company not having occupied West Third street nor any streets except those mentioned in the bill, prior to the adoption of the constitution and the act of 1878, it had no rights under its charter greater or less than if those rights had been granted to a natural person: F. & P. Pass. Ry. Co. v. Philadelphia, 58 Pa. 119.

2. The company took its franchise subject expressly to the power of alteration or repeal by the legislature. Its charter conferred no irrevocable rights upon the corporation, nor did it as to the streets not yet occupied and used by it, constitute a contract. The right given it to construct its road on the streets of the city, was a mere privilege or grant, and until exercised by the company was subject to alteration or repeal: 2 Morawetz, Corp., § 1094; Commonwealth v. Railroad Co., 55 Pa. 452. The constitution saves rights and contracts, not charters and grants of special and exclusive privileges: Lumber & Boom Co. v. Commonwealth, 100 Pa. 439.

OPINION, MR. JUSTICE PAXSON:

It is not denied that the charter of appellant company gives it the power to lay its tracks upon the streets in question. And if it were denied it would not matter, as such power is expressly conferred. The city of Williamsport, appellee, contends that it has no right to do so without the consent of city councils first had and obtained, and refers us to section 9 of article XVII. of the constitution of 1874, and to the act of May 23, 1878, section 16, P. L. 111, as authority for this position. The constitutional provision and act of assembly re-

ferred to, are in substantially the same language, viz.: "No street passenger railway shall be constructed within the limits of any city, borough or township, without the consent of the local authorities thereof."

The appellant company was chartered by act of April 15, 1863, P. L. 1080, and has expended a considerable amount of money on the faith of its charter. It had entered into contracts involving still further expenditure for the purpose of extending its road, and had incurred serious obligations on account thereof, when its operations were arrested by the injunction of the court below, issued at the instance of the appellee.

There is nothing in the company's charter which makes the consent of councils a prerequisite to the exercise of its corporate powers in the extension of its road. Hence we have the question, clearly cut, whether its charter is affected by either the constitutional provision or the act of assembly referred to.

If the charter of the company remains in full force as originally granted by the commonwealth, its right to extend its tracks as proposed, is too clear for argument. It has been said by this court on more than one occasion that the constitution of 1874 did not ipso facto repeal charters. This principle was expressly ruled in Hays v. Commonwealth, 82 Pa. 523, in a very clear opinion by our brother GORDON, and the same thought was expressed by the same judge in Penn. R. Co. v. Duncan, 111 Pa. 352, where he said: "We also agree that the framers of the constitution of 1874, did not intend to violate the laws of the federal government, or to repeal the provisions of any charter granted by the legislature of Pennsylvania." That this case was not intended to assert the doctrine that the constitution repealed existing charters, the extract I have given fully shows; nor was it intended to overrule Hays v. Commonwealth.

It was urged, however, that appellant's charter post-dates the constitutional amendment of 1857, which provides that "the legislature shall have the power to alter, revoke or annul any charter of incorporation hereafter conferred by or under any special or general law, whenever in their opinion it may be injurious to the citizens of the commonwealth, in such manner, however, that no injustice shall be done to the corpo-

rators," and that the appellant's charter is subject to this provision and to appropriate legislation to enforce it. I concede all this, but I do not understand that the act of 1878 was intended to enforce this amendment or to repeal the charter of the appellant. The amendment of 1857 did not give an arbitrary power to the legislature to repeal charters at will. It only authorizes such repeal for cause. It can only be done where the charter is injurious to the citizens of the commonwealth, and such reason should appear in some way as the moving cause which induced the legislature to take such action. And even where such cause appears, the charter must be revoked or annulled in such manner, and no other, "that no injustice shall be done to the corporators." That I am right in this construction of the amendment of 1857, was clearly shown by our brother GORDON in his opinion in Hays v. Commonwealth, where he says at page 523: "It is said, however, that by the amendment of 1857, the legislature has the power to alter or revoke the charter of this corporation. Be it so; it may be an answer to say, that a constitutional convention is not the legislature in the meaning of that amendment. If, however, it were such, it could only make such alteration or revocation when it was made to appear that the charter in the part proposed to be revoked or altered was 'injurious to the citizens of the commonwealth;' for the legislature cannot act arbitrarily in a matter of this kind, and impose its own will as the ultima ratio. In the case last above cited, Commonwealth v. Pittsburgh & Connellsville Railroad Company, 58 Pa. 26, Mr. Justice SHARSWOOD sets it down as a rule settled not only by judicial but by legislative authority, that the legislature is not the final judge of whether the casus fœderis, upon which the authority to repeal is based, has occurred. As there is in this case no allegation of a breach of any condition under which the Pittsburgh & Castle Shannon Railroad Company accepted its charter, or that that charter is in any particular obnoxious to the welfare of the citizens of this commonwealth, it cannot be successfully urged that it may be revised or abrogated by any state authority whatever. But the constitutional convention claimed for itself no such power; on the other hand, it has expressly set down in article II. of the Schedule, that all rights, actions, prosecutions and contracts shall continue as

if the constitution had not been adopted.    And by the 2d section of article XVI. it is manifest that the convention did not intend to subject any private corporation to any of the provisions of the constitution which might in any degree change the charter thereof.    If otherwise, why say, ' The general assembly shall not remit the forfeiture of the charter of any corporation now existing, or alter or amend the same, or pass any other general or special law for the benefit of such corporation, except upon the condition that such corporation shall *thereafter* hold its charter subject to the provisions of this constitution.'    This section is so comprehensive and clear that nothing is left for surmise or doubt.    Charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation.    It is only on the theory that the manner of voting is not material that the cumulative system is sought to be saddled on this corporation ; but if this company does not hold its charter subject to the provisions of the present constitution, how can it be made subject to any one of its provisions, material or immaterial ?"    Hays v. The Commonwealth received the assent of six judges of this court, only the late Justice WOODWARD dissenting.    It is sound law and must stand.    Our conclusion is that the charter of the appellant is not affected by the constitution of 1874 or the act of 1878.    It follows that it was error to grant the injunction.

We have departed in this instance from our rule not to discuss cases coming here upon appeals from preliminary injunctions.    This appeal presents a question of law only ; there are no facts in dispute.    The report of a master under such circumstances could not aid us.    We have all the light now we could have upon final hearing.    In addition we have been earnestly requested by the counsel on both sides to treat the decree as final.

> The decree is reversed at the costs of the appellee, and the injunction dissolved.