# Junction Passenger Railway *v.* Williamsport Passenger Railway, Appellant.

*Street railways—Charter—Exclusive privilege—Location of road.*

A street railway company, chartered in 1863, was authorized " to lay out and construct a railway, commencing at third and Market streets in the borough of Williamsport, and continuing westwardly along Third street or any other street in said borough to the village of Newberry in said county, and eastwardly through said Third street or streets in said borough, as may be deemed advisable by said company, to and through the borough of Montoursville, with the right to construct branches to the main track of said passenger railway through any of the said streets of this borough of Williamsport, with single or double track." *Held*,

1. That the company had no right to occupy streets running north and south, but was limited to the use of streets running east and west.

2. That the right to construct branches conferred no power of indefinite location, without limit in duration of time, but only the right to select and occupy streets with branches within a reasonable time.

3. That after the expiration of twenty-eight years, and after the village had grown to a city, the right to construct branches was exhausted.

Williamsport Passenger Railway Company's Appeal, 120 Pa. 1, distinguished.

*Circuit—Act, April 14, 1869—Proceeding to test validity of charter.*

Where the state authorities have issued a charter under the act of May 14, 1889, P. L. 211, to a street railway company specifying the straight line of a north and south street as the route of the proposed railway, the Supreme Court will not enjoin the construction of the railway on the ground that the route is not a circuit within the meaning of the act, in a proceeding to prevent the construction of the road, where the state is not a party.

Mr. JUSTICE MITCHELL dissented.

Argued March 16, 1893.   Appeal, No. 344, Jan. T., 1893, by defendant, from decree of C. P. Lycoming Co., June T., 1892, No. 5, on bill in equity.  Before GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity to enjoin defendant from laying and maintaining railway tracks on Market street in the city of Williamsport.

The facts appear by the opinion of the Supreme Court.

The opinion of the court continuing the preliminary injunction, after citing Edgewood Ry. Co.'s Ap., 79 Pa. 268 ; Boyer v. Savings Fund, 1 Leg. Rec. 251 ; Allegheny v. Ohio & Pa. R. R.,

26 Pa. 358; Bank of Pa. v. Com., 19 Pa. 152; Pa. R. R. v. Canal Com'rs, 21 Pa. 9; Com. v. Erie & North-east R. R., 27 Pa. 339; Fertilizing Co. v. Hyde Park, 97 U. S. 659, was as follows, by METZGER, P. J.:

"Under the rules of construction given in the authorities cited, the company defendant in this case takes nothing by construction. Its powers are those which are expressly given by its charter, and such implied powers as are necessary to the exercise of those expressly given. To this extent, and no further, the charter is a contract between the state and the company. Applying these rules of construction to the charter of the defendant company, has it the right to use Market street for the purpose of operating upon it a passenger railway?

"Market street is not a street running eastwardly towards Montoursville or westwardly towards Newberry, but runs northwardly and southwardly, and at right angles with the streets running in the direction of the termini of the railway authorized to be constructed. The further you project the line of the railway on said street the further you get from the termini given in the charter. It is plain, therefore, that the use of Market street for such a purpose is not included in the principal grant. The primary object of the grant was to give the company, defendant, the right to construct a passenger railway to Newberry on the west and to Montoursville on the east, by way of Third or any other street, so as to have a main track by some street from Newberry to Montoursville via the corner of Third and Market streets. The streets named through which such railway may pass are "Third street, or any other street running westwardly, and Third street or any other street or streets running eastwardly." The termini of the railway and the direction of the streets to reach the termini are plainly expressed, and also the intermediate point by way of which the route must be selected. The defendant has the right, under this charter, to construct its line of railroad from the point given, eastwardly or westwardly to the termini, through any street of the city running in an eastwardly or westwardly direction. If either terminus cannot conveniently be reached by any one street, it has the right to use more than one street for that purpose, and, in that event, if a right were not expressly given to construct a branch over any cross street or streets

necessary to connect its main track so as to form one continuous
line, such right would necessarily be implied.

" Thus far there seems to be no difficulty in the construction
of the defendant's charter. It may select any street running
in an eastwardly or westwardly direction, and, if necessary, may
occupy parts of several streets running in the same direction,
but it cannot build more than one railway between the points
named.

" But it is contended by the defendant that the words in the
charter, as follows : ' With the right to construct branches to
the main track of said passenger railway through any of the
said streets of this borough of Williamsport,' gives it the right
to occupy Market street between the points named. In order
to give its charter this construction, we will be obliged to con-
clude that it had the exclusive right to occupy all the streets
in the city which were formerly within the limits of the bor-
ough of Williamsport. If the right to build a branch on Mar-
ket street is conceded, the same right exists as to every other
street running north and south which was within the borough
limits. The effect of such a construction would be that no
other company ever could build a railway over any of said
streets. ' Whenever a charter would be applied for to construct
a passenger railway through any of said streets, all that it would
be necessary for the old company to do, in order to prevent the
new company from constructing its road, would be to commence
constructing a railway or branch through some portions of the
streets covered by the charter of the new company. The com-
pany can prevent any competition without making a single move
to give the public the advantage of railway transit over these
streets, until a move is made by some other corporation, and then
it is only necessary for the defendant to occupy a sufficient por-
tion of such streets to make the charter of the new company
valueless.

" More than twenty-eight years have elapsed since the de-
fendant company obtained its charter, and no actual attempt
was made to occupy Market street until after the common-
wealth's grant to the plaintiff. If the position of the company
is correct, we must conclude that the legislature, when it passed
the act incorporating the defendant, intended to preserve for-
ever all the highways in Williamsport which were then within

the borough limits, for the use of the company, until it might suit the pleasure of the stockholders to build street railways upon them. If so, the commonwealth of Pennsylvania parted with its right of eminent domain over all said streets to the defendant for railway purposes, and the defendant can go into all the streets in this city which were formerly in the borough of Williamsport, without the permission of the local authorities, and from time to time, whenever it chooses, and for all time to come, select therefrom just such street or streets as it may choose, and thereon, without let or hindrance, erect and maintain a street railway or railways. Whilst the legislature has this power undoubtedly, and could grant this privilege, yet, as Justice STRONG, in Commonwealth v. Central Railroad Company, 52 Pa. 506, said: ' It is still the duty of the courts to presume they have not conceded this power until the contrary is shown in unmistakable language.'

" Is the right to build branches on Market and other streets running north and south given to defendant by its charter in indubitable language ? Can we say such right exists free from reasonable doubt ? If the right is not expressed in unmistakable language, and we are left in doubt as to its interpretation, such doubt must be resolved against the corporation. To be in doubt in such a case is to be resolved. The words used in the charter cannot by any fair interpretation be made to include the right claimed by the defendant company; and we can neither add to nor take from the charter any words, nor can we change the meaning of its language. Taking the words of the charter as we find them in it, we must conclude that the language ' through any of said streets ' can only refer to streets antecedently named in the charter. The streets named are certain streets running eastwardly and westwardly, from which the defendant company could select its route so as to have a continuous line from Newberry to Montoursville. To give it any other interpretation is to give to the charter a meaning that the language used in it does not imply.

" It may be said that to give the language used a literal interpretation, makes the branching privilege useless to the defendant. If such were the case, it would not change the rule of construction. The defendant accepted the charter just as it reads, and it is likely that this clause may not at the time

have been regarded as of any great importance. At most, the privilege intended to be granted by these words was only auxiliary to the principal grant which was the object of the charter. If the right to construct branches, confined as it is to streets through which the company has constructed its main track, is of no importance to the company, it at least can work no harm. It in no way conflicts with, or affects, the principal grant.

" Looking, then, to the language of the charter, we conclude that the words, ' to construct branches to the main track through any of the said streets,' authorize the construction of branches through any of the streets occupied by the main track authorized by the principal grant.

" The contention by defendant, that if we construe the words ' said street' as referring only to the streets antecedently named, we must include Market street, would be true if Market street had been named as one of the streets through which the railway could be laid. This is not the fact. Market street is named only as a starting point from which the defendant can run its lines east and west to the points mentioned in the charter. It obliges the company to lay its main track from Newberry to Montoursville on some street by way of the corner of Third and Market. It does no more than limit the route.

" It is further contended by the defendant that the power to construct its railway eastwardly through Third street or any other street or streets in said borough as may be deemed advisable by said company, to and through the borough of Montoursville, necessarily includes the right to use Market street running north to a street, for example, Washington street, running eastwardly in the direction of Montoursville; or to use Market street running south from Third street to Front street, which latter also runs eastwardly towards said borough of Montoursville. It might be conceded that the company could originally have selected either of these streets through which to run their railway. It did not do so. As early as 1864 the company made its selection and constructed its railway on East Third street eastwardly to the Philadelphia & Erie Railroad, a distance of probably three fourths of a mile in the direction of Montoursville, and has operated it ever since. The wisdom of the selection made by the company is apparent when we consider the fact that East Third street is the only street leading

in that direction which connects with the public highway running to and through the borough of Montoursville. Had Washington street been selected, it would have necessitated not only the branch on Market street running north a distance of about half a mile in a direction away from Montoursville, but the company would have been obliged, before reaching the borough limits, to return again to East Third street by another cross street. If Front street had been selected, the company would have been compelled to return to East Third street before reaching the present terminus of its main track as already laid on said street.

" But it is a sufficient answer to this claim of the defendant to say that the company, having long ago made its choice of routes given by its charter and constructed its railway thereon, it cannot now be permitted to select another route and construct another railway on some other street. Having determined its election and laid its track on East Third street, it has exhausted its power in this respect given to it by its charter. It can go to Montoursville by East Third street, or any other street or streets, but not by all the streets running in that direction. To hold otherwise would be to enlarge its charter privileges by implication, and this would violate the plainest rules of construction. The construction contended for would give the defendant company the right to build as many railways as there were streets and highways in the borough of Williamsport, running in the direction of Montoursville.

" We are, therefore, of opinion that the defendant company has not the right to occupy Market street, in the city of Williamsport, for railway purposes. Such right is not expressly given by the charter, nor does it arise by necessary implication."

The case was referred to J. F. Strieby, Esq., as master, who recommended a decree in favor of plaintiffs.

The court entered the following decree:

"And now, to wit, Feb. 4, 1893, this case came on to be heard upon the master's report and the exceptions thereto, and was argued by counsel for the respective parties, and thereupon, upon the consideration thereof, it is ordered, adjudged and decreed, that the exceptions be dismissed and the report

confirmed, and that a permanent injunction issue restraining the Williamsport Passenger Railway Company, defendant, its officers, agents and contractors or employees, from digging up, excavating or occupying Market street, in the city of Williamsport, with its tracks or other materials, between the intersection of Market street and Hepburn street and the south line of said city. And that the Williamsport Passenger Railway Company is ordered and required to take up and remove the railway tracks by it laid down on said Market street, and also remove the cross-ties and other materials and incumbrances placed in, upon and along said Market street by said Williamsport Passenger Railway Company, between the intersection of Hepburn and Market streets and the south line of said city, and that the said Williamsport Passenger Railway Company, defendant, pay all the costs, including the examiner's and master's fees."

*Error assigned,* inter alia, was decree, quoting it.

*John G. Johnson, Henry C. Parsons, Addison Candor* and *C. LaRue Munson* with him, for appellants.—The charter of the Williamsport Passenger Railway Co. contains an express power to construct branches to its main track, through any of the streets of Williamsport: McAboy's Ap., 107 Pa. 548 ; Western Pa. R. Co.'s Ap., 104 Pa. 406 ; Volmer's Ap., 115 Pa. 166.

The proper interpretation of "said streets," in appellant's act of incorporation, is that which concedes its power to use any of the streets of the borough of Williamsport for the construction of branches to its main line: Monongahela Navigation Co. v. Com., 66 Pa. 83. Notwithstanding the general rule that full effect must be given to every word, if no sensible meaning can be given to the word or phrase or if it would defeat the real object of the enactment, it may, or rather it should be eliminated: Endlich Interpretation Statutes, §§ 301, 319, 320 ; Lancaster Co. v. Frey, 128 Pa. 599 ; Fisher v. Connard, 100 Pa. 69 ; Com. v. Fraim, 16 Pa. 169 ; Improvement Co. v. Com., 94 Pa. 455 ; Reeves v. Traction Co., 152 Pa. 153.

Nothing in the charter required it to build a line on that street within any determined period, and it could exercise its

rights on that street whenever it saw fit to do so: People's Pass. Ry v. Baldwin, 14 Phila. 232; P. W. & B. R. R. v. Williams, 54 Pa. 103.

The charter of the company, appellee, is fatally defective. The 15th section of the act of May 14, 1889, under which it is incorporated, requires that it shall have a route "forming a complete circuit with its own track." Its chartered route is a straight line from Hepburn and Market streets, through Market street to the south line of the city of Williamsport: Larimer Ry. Co. v. Ry., 137 Pa. 547.

*H. C. McCormick* and *John J. Reardon, W. W. Hart,* and *J. B. Krause* with them, for appellee.—A company must show a clear and indubitable right to every franchise which they claim. They have no cause to complain if every intendment not entirely unfounded be made against them: Com. v. Cent. Pass. Ry., 52 Pa. 521; Bank of Penna. v. Com., 19 Pa. 152; Penn. R. R. v. Canal Co., 21 Pa. 9; Allegheny v. Ohio R. R., 26 Pa. 358.

The court has no power in this collateral proceeding to determine either the regularity of the grant of the franchise by the commonwealth to the Junction Company, or to determine whether or not the Junction Passenger Railway Company can with its road, either by single or double track, form a complete circuit on Market street: Western Pennsylvania R. R. Co.'s Ap., 104 Pa. 406.

OPINION BY MR. JUSTICE DEAN, April 3, 1893:

Both plaintiff and defendant are street railway corporations under the laws of this commonwealth. The plaintiff's charter is dated April 8, 1892, and was issued under the general act of May 14, 1889. The defendant was incorporated long before, under special act of April 15, 1863. Both have authority to construct and operate street railways in Williamsport. The plaintiff, by its charter, is authorized to occupy and operate its railway on Market street as follows: "Beginning at the intersection of Market and Hepburn streets and thence southwardly through Market street in said city to the southerly line of the city."

The defendant's charter being the act of 1863, under which

it is incorporated, specifies its right as follows: "Said company shall have power to lay out and construct a railway, commencing at Third and Market streets in the borough of Williamsport, and continuing westwardly along Third street or any other street in said borough to the village of Newberry in said county, and eastwardly through said Third street or streets in said borough, as may be deemed advisable by said company, to and through the borough of Montoursville, with the right to construct branches to the main track of said passenger railway through any of the said streets of this borough of Williamsport, with single or double track."

It will be noticed that, regard being had to the general direction of each railway, as pointed out in their charters, there would not necessarily be any antagonism or rivalry between them. The plaintiff is to run north and south; the defendant east and west.

When plaintiff obtained, on the 8th of April, 1892, from the commonwealth, the right to lay its track north and south on Market street, there was not a rail upon it, except where defendant crossed it at Third street. It was open, and its unoccupied appearance invited appropriation.

On the 14th of April, 1892, six days after plaintiff's charter was issued, defendant commenced work on Market street at different points with a view of laying its rails on the ground described in plaintiff's charter. Whether the intention was to exclude plaintiff from the street, or to, in good faith, construct and operate its own railway thereon, is not material, if plaintiff has the superior right, for this right cannot be exercised if the defendant continues its work.

When the work was commenced, plaintiff filed this bill, averring its right to Market street, denying that of defendant, and praying for an injunction. Defendant answered, by averring its own prior right under the grant in special act of the 15th of April, 1863, and further denying plaintiff's right to the corporate power it claimed, because, as it alleged, the route as set out in its charter did not constitute a complete circuit, an essential requirement, without which there could be no lawful organization under the general act of 1889. A preliminary injunction during pendency of suit was awarded, and J. F. Strieby, Esq., was appointed master to take testimony, find facts, and suggest final decree.

The material facts as found by the master are: 1. Defendant commenced the work of excavation on Market street on the 14th of April, 1892, and was proceeding with it when stopped by the preliminary injunction. 2. That up to that date no track of a railway had been laid upon the street, or work done upon it with that intention. 3. That the work being done by defendant would effectually prevent plaintiff from occupying the street as described in its charter. 4. That defendant had commenced work on Third street in 1864, and in subsequent years had largely increased its trackage, principally in an east and west course, the variations being only for short distances to give it a more eligible route in one or other direction. 5. That in 1891 it had substituted electricity for horse-power. 6. That the route described in plaintiff's charter was not a circuit in the sense that a starting point could be again reached by traveling the untried length of the railway on a separate roadbed, but to reach such starting point the same rail must be run over back again. 7. At date of defendant's franchise in 1863, Williamsport was a borough with a population of about 4000; that in 1892 it had become a city with a population of about 35,000.

As matters of law, he concludes, that from the description of defendant's grant, as applied to the streets named in it as they then existed, and from the course of Market street, defendant never had a right to occupy Market street. That the construction of its railway, from the plain import of the description in the act of assembly, was to be eastwardly and westwardly from the intersection of Third and Market, and the implication of a right to go north and south on Market is not warranted by either the language of the description, or the circumstances connected with the location and operation of the railway. That the words " the right to construct branches to the main track of the said passenger railway through any of the said streets, " mean only streets theretofore mentioned in the description, as Third street or any other street running westwardly to Newberry, or Third street or any other street running eastwardly to Montoursville, and that by no reasonable implication could Market, a north and south street, be meant. He further concludes that the word " circuit " in the act of 1889 does not mean a complete or geometrical circuit, but that it was used as synonymous with course or route.

Therefore, he suggests that defendant be perpetually enjoined from laying its track upon or occupying Market street from its junction with Hepburn street southwardly to the city line.

On full hearing before the court on exceptions to the master's report, it was, on February 4, 1893, approved, and the preliminary injunction was made perpetual; the court in its decree adopting and reaffirming a very full opinion, filed when the preliminary injunction was awarded on the 11th of May, 1892.

From this decree the defendant took this appeal.

Defendant's argument sets out very clearly and broadly the powers and rights claimed by it under the act of 1863. If sustained, the injunction restraining it from occupying Market street ought not to have been awarded; if not well founded, the decree should be affirmed. Its claim may be thus condensed : " Under a fair interpretation of its grant under the act of 1863, it confers on defendant the right to lay its rails on any of the streets of Williamsport."

The value of such a right, to a private corporation, in a growing city like Williamsport, must be very great, and ought not to be disturbed if clearly sanctioned by law. The consequences in admitting it, however, are very grave to the city as well as to this plaintiff. If the right has its existence in the act of 1863, then the company, in its exercise, is altogether free from the control of the city authorities, except in those immaterial particulars specified in the act. Without the consent of the city the defendant can, for all time, appropriate for the use of the railway any of its streets. The city is, so far as concerns the use of its streets, by a law of the commonwealth, delivered over to a private corporation, having no other interest, perhaps, except that of collecting fares from passengers. Its assertion is, that under a special act of the legislature in 1863 it was endowed with the right to construct in Williamsport, on any street or streets eastwardly and westwardly, without limitation as to time, a passenger street railway, with branches on all cross streets. That, although at the date of the grant, Williamsport was a small borough of 4000 people, yet that now, twenty-eight years after, when it has become a city of 35,000 people, with greatly enlarged territory, and its form of municipal government changed, it has the same right

to the streets of the city as it had to those of the borough in 1863.

It is perhaps too late to inquire whether the legislature, under the obnoxious system of private legislation, before the adoption of the constitution of 1874, could do this, but it is not too late to inquire whether in this instance it has done so.

In this inquiry we start with the principle, even then old, declared by this court in 1855 in the construction of a grant to a private corporation through public property, in Allegheny City v. Ohio & P. R. R. Co., 26 Pa. 358: "Nothing is to be taken by implication against the public except what necessarily flows from the nature and terms of the grant." This doctrine has been repeatedly announced in a large number of cases since. In Bank of Penna. v. Commonwealth, 19 Pa. 152, we held that unless this doctrine be strictly adhered to, "the legislature, without knowing or intending it, might be induced to disarm the state of the most necessary powers and transfer them to corporations. The continued existence of a government under such circumstances would not be of much value. There is no safety to public interests except in the rule which declares that the privileges not expressly granted in the charter are withheld." Again in Commonwealth v. E. & N. E. R. R., 27 Pa. 339 : "A doubtful charter does not exist; because whatever is doubtful is decisively certain against the corporation."

In this case, on the 8th of April, 1892, under the general act of 1889, the commonwealth granted, by plain words to the plaintiff, the right to occupy one particular street with a street railway, specifying the points of beginning and ending, and while granting this right, the exercise of it is made to depend on the consent of the city. Six days afterwards, it is met by the defendant with a denial of the right of the state to grant to plaintiff, or any other corporation, the street for such purpose, because the same sovereign had already in 1863 made a grant to it of the same street for the same purpose ; and this being the prior grant, it renders valueless the later one.

Where are the indubitable words of this first grant which give to the defendant this street? The plaintiff's grant being definite as to location, it will prevail, unless defendant's to the same location be definite. We assume, with the court below, that defendant's right to occupy Third street, or any other

street running eastwardly and westwardly to its terminal points, is definite as to location ; but, according to defendant's own view, the right to construct branches to this definite location of its main line was wholly indefinite as to location of the branches. Not a single street was named, nor were any words used, certainly designating them. Follow to its legitimate conclusion the defendant's claim in its own words, as stated in paragraph 3 on page 58 of the paper-book, and see to what consequence it leads :

" A fair interpretation of the grant makes it confer the right to construct branches on any of the streets of Williamsport." That is, if there be no time within which the streets are to be designated then "any" necessarily includes all; if it have the right to all for all time, then no other railway can ever have the right to any street; defendant may or may not occupy the streets, but if it do not, its prior, and therefore superior right excludes all others. That such a right, altogether doubtful in its exercise, should extend forever to all the streets running north and south, cannot be based on any reasonable interpretation of the act. If the legislature intended to confer such a power of indefinite location, without limit in duration, it should have said so in plain words. No court, under any rule applicable to grants of rights to private corporations as against the public, will imply such a scope to the words used. The manifest implication from the language is, the right to select and occupy streets with branches within a reasonable time. No branch streets are specified ; these must be specified by the defendant by occupancy. It may take many, few, or none ; but if it does take any, it must point them out by unmistakable acts. When it actually occupies them, then the grant, certain as to power to take, is no longer doubtful as to location.

What was a reasonable time to make certain the uncertainty in this grant by a selection of branch streets ? We have no hesitation in holding that a delay of twenty-eight years, until the village had become a city, until science had substituted an entirely different motive power, and until after the state had granted this unoccupied Market street in clearly expressed terms to another corporation, is too late. Defendant's indefinite location has become fixed and definite, so far as it has made the selection of branch streets and is in the actual occu-

pancy of them; and while no subsequent grant by the state, under the act of 1889, will be effectual to disturb it in the operation of its railway where built, its power to go on defining what streets it will take has ceased. The state has a right to presume, and the presumption is conclusive, that after this lapse of time defendant has taken all it desired under the grant, and all it had the right to take. As to future appropriations of north and south streets, they can only be made under the laws applicable to corporations of a like character.

In opposition to this view, we are confronted with the opinion of this court in Williamsport Pass. Ry. Co.'s Appeal, 120 Pa. 1, which is cited and relied on, as in effect an adjudication of this contention. That case does not touch upon this issue passed upon in the court below or here. The question there was whether, to exercise the express right conferred by the act of 1863 in the extension of its road east and west, the defendant must have the consent of the city council. This court held that the work then being done was under the express authority of the charter. Chief Justice PAXSON in the very first words of the opinion says: " It is not denied that the charter of the appellant company gives it the power to lay its tracks upon the streets in question. And if it were denied, it would not matter, as such power is expressly conferred." He had in his mind the power to run westwardly to Newberry, and eastwardly to Montoursville. This was not denied then, nor is it denied now. It was decided, that the express power thus conferred of running east and west to its terminal points was not abridged or taken away either by the constitutional amendments of 1857, the new constitution of 1874, or the general legislation subsequent thereto. That case was rightly decided on the single question then before us. Here, the power to appropriate north and south streets under a power to appropriate east and west streets is denied.

The court below holds that neither expressly nor by fair implication from the words of the grant, has the defendant the right to occupy Market street. We affirm the decree, not only for these reasons, but for the additional one, that the grant of any streets, not leading in the direction of its terminal points, was wholly indefinite, only to be made definite by their occupation under the grant within a reasonable time, now passed;

and that any further occupation by defendant of north and south streets must be accomplished with the consent of the city, under the general legislation applicable to street railways in this commonwealth.

As to the assignment of error that plaintiff's route does not describe a circuit under the act of 1889, and for that reason it can exercise no corporate power to construct its railway, we are of opinion that as the state authorities, in their understanding of the meaning of the term "circuit," issued a charter specifying the straight line of a north and south street as the route of the proposed railway, we ought not in this proceeding, in which the state is no party, to render a judgment which would in effect revoke the charter. If the charter is inoperative because it described a route not authorized by the act of 1889, that question can be most effectively determined in another form of proceeding. The decree of court below is affirmed, and appeal dismissed at costs of appellant.

Mr. Justice Mitchell dissented.